Michael MARTINEZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–07–00921–CR.

Court of Appeals of Texas, Houston (1st Dist.).

Sept. 17, 2009.

Discretionary Review Refused Feb. 10, 2010.

Jonathan Lewis Munier, Houston, TX, for Appellant.

Alan Curry, Chief Prosecutor, Appellate Division, Harris County Dist. Attorney's Office, Houston, TX, for Appellee.

Panel consists of Justices KEYES, ALCALA, and HANKS.

## OPINION

ELSA ALCALA, Justice.

Appellant, Michael Martinez, appeals from the trial court's judgment ordering that he serve life in prison for aggravated robbery. *See* TEX. PENAL CODE ANN. § 29.03 (Vernon 2003). Appellant pleaded not guilty to the jury, but the jury found him guilty and determined his sentence. In three issues, appellant contends the evidence is factually insufficient; his attorney rendered ineffective assistance of counsel during the voir dire phase of trial by failing to inquire whether the jurors could consider the minimum punishment; and the trial court committed harmful error by failing to sua sponte instruct the jury on the State's burden to prove extraneous offenses beyond a reasonable doubt in the punishment phase of trial. We conclude the evidence is factually sufficient; appellant's attorney did not render ineffective assistance during voir dire; and the failure to include the "beyond a reasonable doubt instruction" did not egregiously harm appellant. We affirm.

## Background

Steven Kwiatkowski was an undercover narcotics officer with the Houston Police Department (HPD). On December 15, 2005, he and another HPD officer, Berg, went undercover to the Montrose area of

Houston to purchase narcotics. They were approached by four people in a car, one of whom was appellant. Appellant asked if the officers were looking for a party. The officers said no. The car left but quickly returned, and the occupants asked the officers if they wished to purchase marijuana. When the officers responded that they wanted cocaine, appellant said they had crack cocaine. As appellant approached the officers with Richard Garza, it appeared to the officers that Garza was carrying a "baggie of crack." The officers asked for $20 worth of crack.

Instead of tendering the cocaine, appellant pulled out a pistol, placed it to Kwiatkowski's stomach, and demanded Kwiatkowski's money. Kwiatkowski pulled a $20 bill from his pocket and threw it to the ground. Garza, who also pulled out a gun, picked up the money and told appellant to search Kwiatkowski. Appellant found Kwiatkowski's police identification in Kwiatkowski's wallet. When appellant said, "Oh, hell no," Kwiatkowski knew appellant had figured out that Kwiatkowski was a police officer. After finding the police identification, appellant fired four shots at Kwiatkowski, hitting him three times in the abdomen and once in the leg, shattering the leg. To defend himself, Kwiatkowski retrieved a gun he had hidden on his body and shot at appellant, who ran away with Garza.

After appellant and Garza pulled guns on Kwiatkowski, Berg ran from the scene, until he was approached by a man holding a shotgun. Berg believed the man with the shotgun was one of the two men who had been waiting in appellant's car. Berg took his own gun and shot at the man with the shotgun. At this point, the surveillance officers, who were the back-up officers for Kwiatkowski and Berg, approached the scene. Walker, one of the surveillance officers, shot and killed the man with the shotgun. Walker also shot another man after that man shot at Walker's Jeep.

Derrick was an HPD officer on routine patrol when he heard over the radio that an officer was shot. Derrick found a pistol and Kwiatkowski's wallet in a vacant field near where appellant and Garza were found hiding under a house. Appellant and Garza were found after a police dog followed a scent from the scene where the shooting occurred.

DNA analysis was performed on Kwiatkowski's police identification and the guns found at the scene of the shooting. Within a statistical probability, the DNA on those items matched appellant's DNA.

During voir dire, the State asked the venire members if they could consider the maximum punishment, life in prison. The trial court also mentioned the range of punishment and asked the venire members if they could consider the entire range of punishment. Appellant's counsel, however, did not ask any questions concerning the range of punishment during his questioning of the panel at voir dire.

After appellant was found guilty of aggravated robbery by the jury, both sides presented evidence in the sentencing phase of trial. The State presented evidence of appellant's prior convictions, appellant's unadjudicated extraneous offenses, as well as evidence concerning how the shooting affected Kwiatkowski. However, the jury charge in the punishment phase of trial did not include an instruction that extraneous offenses must be proven beyond a reasonable doubt before the jury could consider the evidence of the extraneous offenses.

After appellant was sentenced, he was appointed appellate counsel who filed an *Anders* brief stating that no valid grounds

for appeal existed and that appellant's appeal was frivolous. *See Anders v. California,* 386 U.S. 738, 744, 87 S.Ct. 1396, 1400, 18 L.Ed.2d 493 (1967). Appellant filed a pro se response raising four issues. Faced with the *Anders* brief, the State waived the opportunity to file an appellee's brief.

In January 2009, we issued an order abating the appeal after determining that arguable grounds for appeal exist. We granted appellant's appointed counsel's motion to withdraw. We remanded the cause for the trial court to appoint new appellate counsel or, if appellant wished, to allow appellant to proceed pro se. We did not rule on the ultimate merits of the issues raised by appellant in his pro se response. In our order, we stated, "When we identify issues that counsel on appeal should have addressed but did not, we need not be able to say with certainty that those issues have merit; we need only say that the issues warrant further development by counsel on appeal."

Following our abatement order, the trial court appointed new counsel who has filed a brief presenting the three issues before us in this appeal. We therefore now address the merits of the issues raised by new counsel in this appeal.

## Factual Sufficiency of Evidence

In his third issue, appellant contends the evidence is factually insufficient to support the jury's finding of guilt for aggravated robbery. Specifically, appellant asserts the evidence presented at trial does not support a finding beyond a reasonable doubt that a gunshot by appellant caused the injury of Kwiatkowski. Appellant asserts the verdict is against the great weight and preponderance of the evidence by pointing to (1) the rapidity of the events and (2) the testimony at trial, particularly that of Kwiatkowski, that does not clearly

establish the number of shots fired by Garza and by appellant.

A person commits aggravated robbery when he commits robbery and he causes serious bodily injury to another or uses or exhibits a deadly weapon. TEX. PENAL CODE ANN. § 29.03(a)(2) (Vernon 2003). A person commits robbery if, in the course of committing theft and with intent to obtain or maintain control of the property, he intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. *Id.* § 29.02(a)(2). "In the course of committing theft" means conduct that occurs in an attempt to commit theft, during the commission of theft, or in immediate flight after the commission of theft. *Id.* § 29.01(1). A person commits theft if he unlawfully appropriates property with the intent to deprive the owner of the property. *Id.* § 31.03(a) (Vernon Supp. 2008). A firearm is considered a deadly weapon. *See id.* § 1.07(a)(17)(A).

When conducting a factual-sufficiency review, we view all of the evidence in a neutral light. *Vodochodsky v. State,* 158 S.W.3d 502, 509 (Tex.Crim.App.2005); *Hoang v. State,* 263 S.W.3d 18, 23 (Tex. App.-Houston [1st Dist.] 2006, pet. ref'd). We will set aside the verdict only if (1) the evidence is so weak that the verdict is clearly wrong and manifestly unjust or (2) the verdict is against the great weight and preponderance of the evidence. *Watson v. State,* 204 S.W.3d 404, 414–15 (Tex.Crim. App.2006); *Johnson v. State,* 23 S.W.3d 1, 11 (Tex.Crim.App.2000). Under the first prong of *Johnson,* we cannot conclude that a conviction is "clearly wrong" or "manifestly unjust" simply because, on the quantum of evidence admitted, we would have voted to acquit had we been on the jury. *Watson,* 204 S.W.3d at 417. Under the second prong of *Johnson,* we cannot declare that a conflict in the evidence justifies a new trial simply because we disagree

with the jury's resolution of that conflict. *Id.* Before finding that evidence is factually insufficient to support a verdict under the second prong of *Johnson,* we must be able to say, with some objective basis in the record, that the great weight and preponderance of the evidence contradicts the jury's verdict. *Id.* In conducting a factual-sufficiency review, we must also discuss the evidence that, according to the appellant, most undermines the jury's verdict. *Sims v. State,* 99 S.W.3d 600, 603–04 (Tex. Crim.App.2003).

Appellate courts should afford almost complete deference to a jury's decision when that decision is based upon an evaluation of credibility. *See Lancon v. State,* 253 S.W.3d 699, 705–07 (Tex.Crim.App. 2008). The jury is in the best position to judge the credibility of a witness because it is present to hear the testimony, as opposed to an appellate court who relies on the cold record. *Id.* The jury may choose to believe some testimony and disbelieve other testimony. *Id.*

■ Appellant challenges the reliability of Kwiatkowski's testimony by pointing to an inconsistency in Kwiatkowski's testimony concerning the sequence of the events. Appellant also challenges the reliability of Kwiatkowski's testimony because Kwiatkowski acknowledged he was uncertain as to how many shots appellant fired. Kwiatkowski testified that appellant pulled out a pistol, placed it to Kwiatkowski's stomach, and demanded money before appellant found Kwiatkowski's police identification. Kwiatkowski, however, also testified during cross-examination that appellant pulled out his pistol and pointed it at Kwiatkowski after Officer Berg attempted to hand Garza a $20 bill.

While Kwiatkowski's testimony is conflicting as to when appellant pulled out his pistol, when viewed in a neutral light, the evidence shows that appellant pulled out his pistol either before he demanded money from Kwiatkowski or before he took Kwiatkowski's wallet. Regardless of when appellant pulled out his pistol, the undisputed evidence shows that appellant, in the course of committing theft of Kwiatkowski's property, exhibited a firearm, which is all that is required to establish the offense of aggravated robbery. *See* TEX. PEN.CODE ANN. §§ 1.07(a)(17)(A), 29.02–.03. Furthermore, other evidence supports Kwiatkowski's testimony concerning the events that occurred. Officer Derrick found a pistol and Kwiatkowski's wallet in a vacant field near where appellant was arrested. Appellant did not present evidence at trial about the events giving rise to his conviction.

Appellant's challenge to the factual sufficiency of the evidence is based on the credibility of witnesses and the weight to give their testimony, issues on which we must defer to the jury. *See Lancon,* 253 S.W.3d at 705. When viewed in a neutral light, the evidence tending to prove that appellant is guilty of aggravated robbery is not so weak as to render the jury's verdict clearly wrong or manifestly unjust. *See Johnson,* 23 S.W.3d at 11. Furthermore, when viewed in a neutral light, the verdict is not against the great weight and preponderance of the evidence that appellant committed the offense of aggravated robbery. *Id.*

We overrule appellant's third issue.

### Ineffective Assistance of Counsel During Voir Dire

In his first issue, appellant contends his trial counsel was ineffective because his attorney did not conduct meaningful voir dire, in that he failed to ask jurors if they could consider the minimum punishment if appellant were found guilty.

■ To prevail on a claim of ineffective assistance of counsel, the defendant must show that trial counsel's performance was deficient and a reasonable probability exists that the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 694, 104 S.Ct. 2052, 2064, 2068, 80 L.Ed.2d 674 (1984). The first prong of the *Strickland* test requires the defendant to show that counsel's performance fell below an objective standard of reasonableness. *Thompson v. State*, 9 S.W.3d 808, 812 (Tex.Crim.App. 1999). We look to the totality of the representation and to the circumstances of the case, not to isolated errors. *Robertson v. State*, 187 S.W.3d 475, 483–84 (Tex.Crim. App.2006). Thus, the defendant must prove objectively, by a preponderance of the evidence, that trial counsel's representation as a whole fell below professional standards. *Id.; Mitchell v. State*, 68 S.W.3d 640, 642 (Tex.Crim.App.2002). The second prong requires that the defendant show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068; *Thompson*, 9 S.W.3d at 812. Because the reviewing court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. We review voir dire by appellant's trial counsel in its entirety in ruling on appellant's claim of ineffective assistance of counsel. *See Robertson*, 187 S.W.3d at 483–84; *Granados v. State*, 85 S.W.3d 217, 231 (Tex.Crim.App. 2002); *Rische v. State*, 834 S.W.2d 942 (Tex.App.-Houston [1st Dist.] 1992, pet. ref'd).

■ We cannot conclude that appellant has shown that counsel's performance fell below an objective standard of reasonableness. *See Thompson*, 9 S.W.3d at 812. As the record is silent on trial counsel's reasoning or strategy in refraining from discussing or questioning about the jury's consideration of the minimum punishment, we presume that his action was strategic. *See Thompson*, 9 S.W.3d at 814; *Apolinar v. State*, 106 S.W.3d 407, 416 (Tex.App.-Houston [1st Dist.] 2003), *aff'd* 155 S.W.3d 184 (Tex.Crim.App.2005). This is not one of those rare cases where no attorney would have engaged in the conduct. *Cf. Miles v. State*, 644 S.W.2d 23, 24 (Tex. App.-El Paso 1982, no pet.) (holding that counsel rendered ineffective assistance by, among other actions, "not ask[ing] the jury a single question on voir dire"). The record shows the topic of the range of punishment was extensively covered during voir dire. Although the defense attorney did not personally voir dire about the range of punishment, the trial court and the prosecutor both questioned the jury about the full range of punishment. In discussing the punishment range with the venire members, the court stated

All I want to know is this, a commitment from each of you that you can consider the full range of punishment; the low end, the medium and the high end, depending on the facts and circumstances that you hear today. Can you tell us that you will keep an open mind and wait but consider the full range of punishment?

Furthermore, the record shows that the State discussed the punishment range with the prospective jury, stating that "juries in Texas ought to be able to consider the full range of punishment, all the way from five years in prison to 99 years or life in prison." Because both the trial court and the State discussed the entire range of punishment with the jury prior to the voir dire

examination by appellant's trial counsel, counsel could have reasonably determined further inquiry into the punishment range was unnecessary. *Cf. Hines v. State*, 144 S.W.3d 90, 97–9 (Tex.App.-Fort Worth 2004, no pet.) (holding that counsel did not render ineffective assistance by only asking venire members whether they could "be fair to both sides" after State's voir dire discussion of full range of punishment). Moreover, the record shows appellant's trial counsel asked the venire during voir dire about their feelings about self-defense, police officers, the crime lab in Houston, the presumption of innocence, and other issues related to the case.

We hold appellant has not established the first prong of the *Strickland* test because appellant has not shown that counsel's performance fell below an objective standard of reasonableness. *See Thompson*, 9 S.W.3d at 812. Because appellant has not established the first prong of the *Strickland* test, we need not address the second prong of the test. *Id.; Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064.

We overrule appellant's first issue.

### Failure to Instruct on Burden of Proof in Punishment Phase

 In his second issue, appellant contends the trial court committed harmful error in the sentencing phase of trial by failing to sua sponte instruct the jury that it could not consider evidence of an extraneous offense unless it first determined that the commission of the extraneous offense was proven beyond a reasonable doubt.

### A. Standard of Review for Charge Error

 In determining whether there is reversible error in the jury charge, we first decide whether error exists, and if error exists, then we determine whether the defendant was harmed. *Middleton v. State*, 125 S.W.3d 450, 453 (Tex.Crim.App. 2003); *Abdnor v. State*, 871 S.W.2d 726, 731–32 (Tex.Crim.App.1994). The appellate court must apply the egregious harm standard to review an erroneous jury charge when the defendant's counsel failed to object to the charge, as in this case. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1984). If appellant's counsel did not make a proper objection at trial, appellant "will obtain a reversal only if the error was so egregiously harmful that he has not had a fair and impartial trial." *Id.*

### B. Extraneous Offense Burden of Proof Charge Is Required

 The Texas Code of Criminal Procedure provides that "evidence may be offered by the State and the defendant as to any matter the court deems relevant to sentencing, including ... any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has been charged with or finally convicted of the crime or act." Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) (Vernon Supp. 2008). Whether or not the defendant requests the instruction, the trial court must instruct the jury in the punishment phase of trial that extraneous offenses must be proven beyond a reasonable doubt. *Huizar v. State*, 12 S.W.3d 479, 484 (Tex.Crim.App.2000). The trial court is required to give the instruction to the jury as the law of the case. *Id.* Therefore, appellant's failure to object to the jury charge at trial does not waive error; rather, the court's failure to give the instruction is subject to the egregious harm analysis. *Id.; Graves v. State*, 176 S.W.3d 422, 435 (Tex.App.-Houston [1st Dist] 2004, pet. struck).

## C. Error Analysis

In the punishment phase of trial, the State introduced appellant's prior convictions as a juvenile and as an adult, as well as testimony about unadjudicated offenses committed by appellant. Appellant did not refute the punishment evidence; the sole challenge was the observation that the unadjudicated extraneous misconduct had not resulted in convictions.

The State introduced a judgment sentencing appellant to the custody of the Texas Youth Commission (TYC) for engaging in delinquent conduct. The delinquent conduct occurred August 16, 2000, when appellant, as a juvenile, committed the offense of fleeing from a police officer on two occasions. In explaining the continuum of sanctions that result in a juvenile being sent to the TYC, a Harris county prosecutor testified that appellant was initially sent to the custody of his parents after his first arrest for evading arrest, but appellant's custody level was raised after his later arrest for evading arrest. A Harris county juvenile probation officer testified that, while in the custody of the Burnett Bayland Reception Center, appellant was placed on probation for evading arrest, but that probation was revoked when the trial court sentenced appellant to TYC for the later offense of evading arrest.

The State introduced the judgments for appellant's convictions after he became an adult, which were convictions for carrying a weapon on August 24, 2003 and for unauthorized use of a motor vehicle on November 7, 2003. The State also introduced testimonial evidence describing the facts underlying the convictions. Concerning the carrying a weapon conviction, the State limited the description of appellant's misconduct on that day to that offense only. In describing the circumstances underlying the unauthorized use conviction, however, the State described not only the

unauthorized use circumstances, but also additional misconduct by appellant. Officer Fibich explained that when he attempted to stop the car appellant was driving at four in the morning, appellant and his passenger fled running from their car when their car stopped. Officer Fibich chased them and they were arrested after a search that lasted over an hour. Officer Fibich found a loaded .22 caliber handgun between the center console and the passenger compartment of the car appellant had driven. Officer Fibich testified that appellant was charged with carrying a weapon, evading arrest, and unauthorized use of a motor vehicle, but, at trial, the State introduced the conviction for the unauthorized use only. The record before us does not show the dispositions of the carrying a weapon and evading arrest charges.

The State introduced testimonial evidence describing facts of an August 2005 assault by appellant on Lucy DeJesus, the mother of his child. DeJesus testified that in the presence of her young daughter, appellant became upset with DeJesus and choked DeJesus until she passed out. The responding police officer saw red marks on DeJesus's neck. DeJesus testified that she was assaulted by appellant more than ten times during the course of their relationship. DeJesus also denied receiving any financial support from appellant to care for their daughter.

■ The trial court did not err by failing to include a burden of proof instruction for the evidence concerning the offenses that resulted in the prior convictions. *Bluitt v. State*, 137 S.W.3d 51, 54 (Tex. Crim.App.2004) ("While the prior convictions must be properly proved, to require that prior convictions be re-proved beyond a reasonable doubt would be an absurd result, as the very fact of conviction is evidence that the burden of proving guilt

beyond a reasonable doubt has already been met in a prior proceeding."). The trial court did err, however, in failing to include a burden of proof instruction concerning the unadjudicated offenses introduced in the punishment phase of trial, which include evidence that appellant assaulted DeJesus in August 2005, appellant committed other assaults on DeJesus, and appellant drove a stolen car on the night Kwiatkowski was shot. Appellant was entitled to an instruction that the unadjudicated extraneous offenses must be proven beyond a reasonable doubt before the jury can consider them. *Huizar*, 12 S.W.3d at 484. We hold the trial court's charge was erroneous by failing to include the burden of proof instructions for unadjudicated extraneous offenses admitted in the punishment phase of trial. *Id.*

### D. Harm Analysis

▉▉▉▉ Having determined that the trial court erred by failing to charge the jury as required, we examine the record to determine whether appellant was egregiously harmed. *Almanza*, 686 S.W.2d at 171. Any harm that is inflicted by the erroneous charge must be "assayed in light of (1) the entire jury charge, (2) the state of the evidence, (3) the argument of counsel and (4) any other relevant information revealed by the record of the trial as a whole." *Id.; Ngo v. State*, 175 S.W.3d 738, 750 n. 48 (Tex.Crim.App.2005). Jury charge error is egregiously harmful if "it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex.Crim.App. 2007) (citing *Hutch v. State*, 922 S.W.2d 166, 171 (Tex.Crim.App.1996)). We engage in this assessment to illuminate the actual, not just theoretical, harm to the accused. *Almanza*, 686 S.W.2d at 174. Furthermore, egregious harm is a difficult standard to meet and must be determined on a case-by-case basis. *See Hutch*, 922 S.W.2d at 171.

### 1. The Entirety of the Charge

Although the trial court failed to instruct the jury to not consider the extraneous evidence unless it was proven beyond a reasonable doubt, the charge in the sentencing phase of the trial generally told the jury that the State had the burden of proof throughout the trial. The trial court's charge to the jury stated, "The burden of proof in all criminal cases rests upon the State throughout the trial and never shifts to the defendant." However, the general charge did not specifically address the burden of proof for unadjudicated extraneous offenses. We conclude that the general charge instructing the jury that the State has the burden of proof throughout the trial is a circumstance that weighs neither for or against a finding of egregious harm.

### 2. The Evidence

In examining whether egregious harm occurred from the failure to include the burden of proof instruction for unadjudicated extraneous offenses admitted in the punishment phase of trial, we consider whether the evidence was clear, strong, direct and unimpeached. *See Zarco v. State*, 210 S.W.3d 816, 824–25 (Tex.App.-Houston [14th Dist.] 2006, no pet.) (concluding that "clear, direct, and unimpeached testimony" during guilt-innocence phase of trial contributed to finding that defendant was not egregiously harmed by lack of sentencing phase instruction regarding burden of proof for extraneous offenses).

Appellant did not present any evidence challenging the State's version of the unadjudicated offenses. The unadjudicated offenses were that appellant assaulted DeJesus numerous times, appellant used a

stolen car the night Kwiatkowski was shot, and appellant illegally carried a weapon and evaded arrest in November 2003.[1] The only point made by appellant's attorney was that these unadjudicated offenses did not result in convictions.

Although the jury charge did not include the instruction that the State had to prove the unadjudicated offenses beyond a reasonable doubt before the jury could consider them, the jury likely believed beyond a reasonable doubt the evidence concerning the unadjudicated offenses because the evidence showing that the unadjudicated extraneous offenses occurred was clear, strong, direct and unimpeached. *See id.* The inclusion of the jury charge, therefore, would not have made a difference in how the jury considered the evidence. *See id.*

In examining whether egregious harm occurred from the failure to include the burden of proof instruction for unadjudicated extraneous offenses admitted in the punishment phase of trial, we also compare the evidence related to the unadjudicated extraneous offenses with the other guilt and punishment evidence in the case. *See Escovedo v. State,* 902 S.W.2d 109, 115 (Tex.App.-Houston [1st Dist.] 1995, pet. ref'd) (finding no indication that jury would have "disregarded or discounted the extraneous offense[s] and assessed a lighter sentence with a burden of proof instruction"); *Yates v. State,* 917 S.W.2d 915, 923 (Tex.App.-Corpus Christi 1996, pet. ref'd) (holding that if only one extraneous offense is contested, failure to give burden of proof instruction does not create egregious harm when numerous other extraneous offenses are included in testimony).

In light of the evidence of appellant's guilt for aggravated robbery in this case, which involves the serious injury to a police officer, the death of appellant's co-actor, appellant's long criminal history, and appellant's numerous encounters with the police, the evidence concerning the unadjudicated offenses does not make the case for punishment clearly more persuasive. *Compare Allen v. State,* 253 S.W.3d 260, 267–68 (Tex.Crim.App.2008) (finding no egregious harm when case for punishment was not made clearly more persuasive by error) *with Ellison v. State,* 97 S.W.3d 698, 701 (Tex.App.-Texarkana 2003, no pet.) (holding that appellant was egregiously harmed because sentence could have been substantially affected by evidence that he committed hate crimes). There is no indication that jury would have disregarded or discounted the unadjudicated extraneous offenses and assessed a lighter sentence had a burden of proof instruction been included in the jury charge. *See Escovedo,* 902 S.W.2d at 115. We conclude that evidence presented by the State of extraneous offenses, in light of appellant's entire criminal record and the jury's acceptance of the State's version of events in its finding appellant guilty of aggravated robbery, weighs against a finding of egregious harm. *See Zarco,* 210 S.W.3d at 824–25.

### 3. Arguments of Counsel

Although the State referred to appellant's unadjudicated extraneous offenses in its closing arguments to the jury, the offenses were included as part of a general theme of appellant's character in the State's argument that appellant has "no

---

1. In his appellate brief, appellant does not complain that the trial court erred by failing to give a burden of proof instruction for the unadjudicated extraneous offense evidence that appellant illegally carried a weapon and evaded arrest in November 2003. We include this offense in the harm analysis because it is the appellate court's duty to assess non-constitutional harm after a review of the record as a whole. *Schutz v. State,* 63 S.W.3d 442, 444 (Tex.Crim.App.2001).

respect for anyone or anything but himself." The State used the extraneous offenses to create a pattern of appellant "getting progressively more and more violent," "evading yet again, running from the police," and "committing crime after crime after crime." The State asked for a sentence of life in prison for appellant, in order to "protect [the jury] and all of us from him." The State, however, did not rely solely on the extraneous offense evidence to argue for a life sentence. Instead, the State also emphasized the violent nature of the offense, the fact that the complainant was a police officer, and the fact that appellant's action of pulling a gun "put [the] chain of events into motion" that resulted in injury to Kwiatkowski.

Appellant's counsel argued that while appellant "deserved to be punished," the jury should "[l]ook at the facts of this case, look at everything in [appellant's] life," to determine what sentence is "fair" before giving appellant a life sentence. Appellant's counsel's sole challenge to the existence of the unadjudicated offenses was that the conduct did not result in criminal arrests or convictions.

We conclude that the arguments of counsel, in light of appellant's entire criminal record, the jury's acceptance of the State's version of events in its finding appellant guilty of aggravated robbery, and the failure by appellant to mount any serious challenge to the existence of the unadjudicated extraneous offenses, weighs against a finding of egregious harm.

### 4. Other Relevant Information

■ In addressing other relevant information, we may consider the severity of the punishment assessed, which may indicate egregious harm in some situations. *See Bolden v. State,* 73 S.W.3d 428, 432 (Tex.App.-Houston [1st Dist.] 2002, pet. ref'd). In this case, appellant received a life sentence, the maximum allowed. However, a maximum punishment alone does not indicate egregious harm. *See Huizar,* 12 S.W.3d at 484. There is no egregious harm if the jury would still have assessed a life sentence, even if properly instructed to consider only extraneous offenses if they first found that appellant had committed those offenses beyond a reasonable doubt. *See Allen,* 253 S.W.3d at 267–68.

The record, exclusive of the unadjudicated acts of misconduct by appellant presented at the punishment phase of the trial, suggests the jury would have assessed the same sentence. *See id.* According to the record, appellant pulled out a pistol, placed it to Kwiatkowski's stomach, and demanded his money. After realizing that Kwiatkowski was a police officer, appellant fired four shots at Kwiatkowski, hitting him three times in the abdomen and once in the leg, causing his leg to shatter. Furthermore, appellant has a lengthy criminal record, including pleas of guilty to two evading arrests committed as a juvenile, juvenile probation that was revoked to confinement in the TYC, a conviction as an adult for carrying a weapon, and a conviction as an adult for the felony of unauthorized use of a motor vehicle. Thus, even if the jury had been properly instructed, it would likely have reached the same result due to the serious injuries to Kwiatkowski and the many prior convictions. *See id.*

We conclude that the life sentence given by the jury, in light of appellant's criminal record and the circumstances of the shooting, weigh against a finding of egregious harm.

### E. No Finding of Egregious Harm

In determining whether appellant was egregiously harmed, the harm which we must consider is the impact of the omission of a reasonable doubt instruction concern-

ing the unadjudicated offenses. *See Ellison v. State,* 86 S.W.3d 226, 227 (Tex.Crim. App.2002). Based on our review of the record and the *Almanza* factors, we cannot conclude that appellant was denied a fair and impartial trial in the jury's determination assessing a life sentence because the State presented uncontested evidence of appellant's many prior convictions spanning a number of years of appellant's life; the State presented largely uncontested evidence of appellant's unadjudicated extraneous offenses challenged only by the fact that the offenses did not result in arrests or convictions; and the offense for which appellant was convicted was a violent crime to a police officer in an event that caused another person's death. *Id.; see Almanza,* 686 S.W.2d at 178; *Yates,* 917 S.W.2d at 923 (holding that, although some harm may have resulted from error, it was not egregious harm because State presented overwhelming and uncontested evidence of many other violent acts for jury to consider that justified life sentence and because there was no evidence that extraneous offenses made case for punishment more persuasive).

We hold that the omission of the required jury instruction did not egregiously harm appellant. We overrule appellant's second issue.

### Conclusion

We affirm the judgment of the trial court.