**Opinion issued June 19, 2014**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-12-00687-CR

———————————

**WILLIE DEWAYNE ROLAND, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 337th District Court**
**Harris County, Texas**
**Trial Court Case No. 1258147**

---

## MEMORANDUM OPINION

A jury convicted appellant Willie Dewayne Roland of aggravated robbery

with a deadly weapon *See* TEX. PENAL CODE ANN. § 29.03 (West 2011). During

the punishment phase of trial, the State questioned Roland about a prior bad act

which had not been finally adjudicated. The jury assessed punishment at 45 years in prison, and the judgment assessed statutory court costs in the amount of $284. In his first issue, Roland challenges the trial court's failure to sua sponte instruct the jury that it must find beyond a reasonable doubt that he committed an extraneous act before considering that act in assessing his punishment. In his second issue, he challenges the sufficiency of the evidence to support the imposition of $284 in court costs.

We affirm.

## Background

Jeff Richardson was a real estate investor who leased apartments. He kept large sums of cash in a safe in his home to use at real estate auctions and foreclosure sales. Late one night in March 2010, five men dressed in overalls with bandanas covering their faces kicked open the door to Richardson's home. They were all carrying guns. Richardson had seen them approaching his house and was in his home office reaching for a gun when the men came upon him. One man put a gun to Richardson's head and told him to hand over his weapon, which he did. But the robber's bandana slipped and before he could pull it back up, Richardson recognized him as a former resident of an apartment on Wiley Street that he had leased to Roland's mother. Richardson knew the man by his nickname, "Poo."

2

Another man shot Richardson in the hip. He was bleeding profusely and told the robbers that they would get no money if he died. The robbers dragged or followed Richardson to his bedroom where he kept a personal safe. His wife was asleep in bed, and the intruders roused her at gunpoint. Richardson opened the safe, removed a total of nearly $20,000, and handed it to the men, who left soon after.

After the police arrived, Richardson was taken by ambulance to the hospital. He later told the police that he recognized one of the robbers as "Poo." The police determined that "Poo" was a nickname for appellant Willie Dewayne Roland and compiled a photographic lineup. Richardson positively identified Roland as the robber who had held a gun to his head.

Several of Roland's relatives testified that he was in a relative's house the night of the robbery, "locked in" behind burglar bars, and without access to a key. Roland testified at the guilt-or-innocence phase, denying any participation in the crime. At that time, his attorney elicited testimony that he had been convicted in 2009 of the state-jail felony offense of attempted possession of a weapon by a felon.

The jury rejected the alibi testimony and found Roland guilty of committing aggravated robbery with a deadly weapon. Roland elected jury sentencing. While several of Roland's relatives testified that a lenient punishment should be imposed

so that he might be able to provide for and participate in the life of his family, Richardson gave victim-impact testimony about being robbed at gunpoint and shot in his home with his wife and grandchildren sleeping nearby.

The State introduced Roland's stipulation that he had previously been convicted of the following crimes: (1) attempted possession of a weapon by a felon in 2009; (2) possession of less than a gram of cocaine on four separate occasions between 1999 and 2001; (3) misdemeanor possession of marijuana on two occasions in 1999 and 2000; and (4) evading arrest on two occasions in 1999.

In addition, while cross-examining Roland during the punishment phase, the State inquired about an extraneous offense that occurred approximately three months after Roland was released from jail after serving his sentence for attempted possession of a weapon by a felon and approximately three weeks before the robbery. On February 25, 2010, police officers executed a search warrant on Roland's home. They found a shotgun, two rocks of crack cocaine weighing 62 and 83 grams, respectively, 304 grams of marijuana, approximately $1900 in cash, and beakers, a whisk, and a scale. Roland said the shotgun and cash belonged to his roommate William Akins. But he admitted that he sold drugs with Akins and that the beakers, whisk, and scale were used to measure drugs for sale. He also admitted that as a result of the search of his home, he was arrested for possession of a controlled substance with intent to deliver, a first-degree felony.

The punishment charge informed the jury that the range of punishment for this offense was five to 99 years or life in prison and a fine of up to $10,000. There was no instruction that the jury could consider evidence of extraneous offenses only if it believed beyond a reasonable doubt that Roland committed those offenses. There was no objection to the charge.

In closing argument, Roland's attorney asked the jury for leniency, noting that his prior offenses were remote, nonviolent, and related to his prior personal use of drugs. The State urged the jury to consider the facts of the robbery as weighing in favor of a more stringent punishment in this case. The State argued that life in prison was the appropriate punishment but that the jury should sentence Roland to no less than 47.5 years. Without objection, the prosecutor stated that the robbery and the arrest for possession with intent to deliver drugs showed both recidivism and a pattern of increasing severity of offense, explaining:

> The Defense wants to tell you that these are problems and indiscretions of his youth. They go back to the use of drugs. Well, Willie Roland graduated. Because he stops being just someone who uses petty drugs, and he became someone who deals them and defends them.

> And he picks up his attempted possession of a weapon by a felon charge, six months in state jail in July of 2009. And just when he graduates from someone who merely has a weapon or may use drugs, by February of 2010, he is in a house that he tells you he lives in. You heard from Jeff Richardson early on that Willie Roland was someone who hung out with people who did and sold drugs. By February, just two weeks before the aggravated robbery that brings us here today, Willie Roland is in a house with almost 150 grams of cocaine. This

5

isn't the petty 1 gram he might have had in his pocket to use on his own at 18 or 19 years old. These are the drugs that lead to guns and money and turf wars and gangs and violence, and Willie Roland is at the center of that.

The jury assessed punishment of 45 years in prison, the trial court imposed punishment and assessed $284 in statutory court costs, and Roland appealed.

## Analysis

### I. Punishment phase jury instruction

In his first issue, Roland argues that the court erred by not sua sponte instructing the jury that it could not consider evidence of extraneous offenses in assessing punishment unless it found beyond a reasonable doubt that Roland committed such extraneous offenses.

Charge error is not reversible unless it is shown to be harmful. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). Moreover, when the appellant fails to object or states that he has no objection to the charge, we will not reverse unless the error was egregious and created harm such as would deny the appellant a fair trial. *See Warner v. State*, 245 S.W.3d 458, 461 (Tex. Crim. App. 2008); *see Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). We determine whether the alleged harm was egregious by examining "the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel, and any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171. To warrant

6

reversal, the record must show that the appellant suffered actual, rather than merely theoretical, harm. *See Warner*, 245 S.W.3d at 461.

> After a finding of guilt, both the State and the defendant may offer evidence:
>
> as to any matter the court deems relevant to sentencing, including . . . the prior criminal record of the defendant . . . [and] any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act.

TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (West Supp. 2013). The Court of Criminal Appeals has held that a trial court is required to instruct the jury that evidence of extraneous offenses and bad acts may not be considered in assessing punishment unless proven beyond a reasonable doubt to be attributable to the defendant. *Huizar v. State*, 12 S.W.3d 479, 484 (Tex. Crim. App. 2000); *see Rayme v. State*, 178 S.W.3d 21, 25 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd).

Here, the State questioned Roland during the punishment phase of trial about the police search of his home and his arrest for possession with intent to distribute a controlled substance, which occurred several weeks before the robbery. At the time of trial in this case, Roland had been tried and convicted of that crime, but it was not final because it was pending on appeal. It also was not part of Roland's stipulated criminal record. The court did not instruct the jury as to the need to find

7

beyond a reasonable doubt that Roland committed the extraneous offense. And Roland did not object to the charge.

Relying on *Bluitt v. State*, 137 S.W.3d 51 (Tex. Crim. App. 2004), the State argues that no extraneous offense instruction was required because a jury found him guilty of that crime beyond a reasonable doubt. At the punishment phase in *Bluitt*, the State re-offered all the evidence previously presented, including three exhibits showing that Bluitt had previously served probation and been placed on deferred adjudication for extraneous offenses. *Bluitt*, 137 S.W.3d at 52. On appeal Bluitt challenged the trial court's failure to instruct the jury that it could consider evidence of these extraneous offense only if it found beyond a reasonable doubt that he had committed them. *Id.*

The Court of Criminal Appeals explained the difference between the "prior criminal record of the defendant," as to which Article 37.07 of the Code of Criminal Procedure does not impose a burden of proof, and "extraneous offenses and bad acts," as to which the Code imposes a beyond-a-reasonable-doubt burden of proof:

> While the prior convictions must be properly proved, to require that prior convictions be re-proved beyond a reasonable doubt would be an absurd result, as the very fact of conviction is evidence that the burden of proving guilt beyond a reasonable doubt has already been met in a prior proceeding.

8

*Id.* at 54. The Court noted that Bluitt had admitted to these offenses during the guilt-or-innocence phase of trial and explained that these offenses were part of his prior criminal record and not extraneous offenses or bad acts as contemplated by Article 37.07:

> In any final conviction, the evidence was subjected to judicial testing of guilt with a standard of proof of beyond a reasonable doubt, and the burden of proof was met. In any probation, the defendant has plead guilty or been found guilty by a judge or jury. In any deferred adjudication, the defendant has plead guilty, and the court has found sufficient evidence to support a finding of guilty. In all these circumstances, the burden of proof has been met. Thus, in all such cases no further proof of guilt is required.

*Id.* The Court held that the trial court did not err in failing to give the extraneous offense instruction because "all of the evidence as to appellant's criminal behavior was in the form of prior offenses which had been subjected to judicial testing under the proper burden and the burden had been met." *Id.*

The State argues that Roland had been convicted of possession with intent to deliver a controlled substance and regardless of the appellate status of that case, the beyond-a-reasonable-doubt burden of proof had been met. However, there was no proof introduced at trial that Roland had been convicted of that crime. Finding that the conviction was pending on appeal and could not be used to impeach Roland under Rule of Evidence 609, the trial court in this case ruled that the State could not ask Roland whether he had been convicted of that crime. The State did not attempt to introduce a judgment into evidence. While *Bluitt* explains the difference

9

between the defendant's criminal record and extraneous offenses, it does not excuse the State from its burden of properly proving the defendant's prior convictions. *See id.* Here the State did not properly prove that Roland had been convicted of possession with intent to deliver a controlled substance, so the evidence would be properly viewed as an extraneous offense. *Cf. id.* Therefore the trial court was required to give the extraneous-offense burden-of-proof instruction, and it erred by not doing so. *See Huizar*, 12 S.W.3d at 484.

However, the record here does not show that the trial court's error caused egregious harm. Roland argues that he was egregiously harmed because insufficient evidence was introduced to show beyond a reasonable doubt that he committed the extraneous offense of possession with intent to deliver a controlled substance. He contends that "a proper burden of proof instruction" was therefore not moot. He also argues that because the jury charge did not include the extraneous-offense burden-of-proof instruction, it did not ameliorate any harm from the State's failure to prove the extraneous offense beyond a reasonable doubt. He contends that the prosecutor's reference to the extraneous offense in closing argument "was powerful and capable of inciting the jury to make a punishment decision based on emotions and cause them to hold Roland responsible for numerous crimes other than the one for which they were to assess punishment." Finally Roland argues that had the jury been properly charged, it "likely" would

have disregarded the extraneous offense evidence and "likely" "would have assessed a sentence less than forty-five (45) years."

In reviewing a claim of egregious harm, we consider the allegation "in light of (1) the entire jury charge, (2) the state of the evidence, (3) the argument of counsel, and (4) any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171; *see Ngo*, 175 S.W.3d at 750 n.48. "We engage in this assessment to illuminate the actual, not just theoretical, harm to the accused." *Martinez v. State*, 313 S.W.3d 358, 367 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd).

First, we consider the entirety of the charge. As in *Martinez*, "[a]lthough the trial court failed to instruct the jury to not consider the extraneous evidence unless it was proven beyond a reasonable doubt, the charge in the sentencing phase of the trial generally told the jury that the State had the burden of proof throughout the trial." *Id.* The trial court's charge to the jury stated, "The burden of proof in all criminal cases rests upon the State throughout the trial and never shifts to the defendant." However, because the jury charge did not specifically address the burden of proof for extraneous offenses, we conclude that "the general charge instructing the jury that the State has the burden of proof throughout the trial is a circumstance that weighs neither for or against a finding of egregious harm." *Id.*

11

Second, we consider the state of the evidence. In considering the harm caused by the failure to properly instruct the jury, we consider whether the evidence of the extraneous offense was "clear, strong, direct, and unimpeached." *Id*. Here, Roland denied owning the money and the gun, but he freely admitted selling drugs. Thus, the inclusion of the extraneous-offense jury charge likely would not have made a difference in how the jury considered the evidence that he was violating the law by selling illegal drugs.

To determine whether the failure to include the burden of proof instruction in the jury charge on punishment caused egregious harm, we also compare the evidence of the unadjudicated extraneous offense with other guilt and punishment evidence. *Id.* at 368. The evidence showed that Roland committed aggravated robbery with four other men. Together they kicked open the door to Richardson's home, in the middle of the night, while his wife and grandchildren slept. Roland held a gun to Richardson's head, robbed him of nearly $20,000, and shot him in the hip causing him to lose a large amount of blood and require emergency medical care. During guilt-or-innocence Roland admitted to having previously been convicted of the state-jail felony offense of attempted possession of a weapon by a felon. During the punishment phase of trial, Roland stipulated to his criminal record, which included prior convictions for: (1) attempted possession of a weapon by a felon in 2009; (2) possession of less than a gram of cocaine on four separate

12

occasions between 1999 and 2001; (3) misdemeanor possession of marijuana on two occasions in 1999 and 2000; and (4) evading arrest on two occasions in 1999. Rather than showing that he had reformed, the criminal record along with the evidence of the aggravated robbery showed a pattern of recidivism. In light of this evidence, the evidence that he may have possessed illegal narcotics with intent to deliver them does not make the case for punishment clearly more persuasive. *See id.*

We next consider the argument of counsel. *See id.* Here, the State referred to the unadjudicated extraneous offense in response to Roland's counsel's argument that his prior criminal convictions were no more than youthful indiscretions. But the focus of the State's argument during punishment was on his pattern of disrespect for the law, the violence and baselessness of the aggravated robbery itself, and the lack of mitigating factors for his commission of the crime. In light of the evidence of guilt and Roland's prior criminal record, the jury's acceptance of the State's version of the events by virtue of its guilty verdict, and Roland's admission that he sold illegal drugs, we conclude that the arguments of counsel weigh against a finding of egregious harm. *See id.*

Finally, we consider any other relevant information, including the severity of punishment. *See id.* In this case, the range of punishment was five to 99 years or life in prison and up to a $10,000 fine. *See* TEX. PENAL CODE ANN. § 29.03(b)

13

(aggravated robbery is first-degree felony); *id.* § 12.32 (West 2011) (punishment for first-degree felony). The State urged the jury to impose a sentence of life in prison, but in no event less than 47.5 years. The jury assessed punishment at 45 years in prison and no fine. In light of the evidence of Roland's guilt and pattern of disregard for the law, including two convictions for evading arrest, we conclude that the punishment imposed weighs against a finding of egregious harm. *See id.*; *Huizar v. State*, 29 S.W.3d 249, 251 (Tex. App.—San Antonio 2000, pet. ref'd) (holding that 99 year sentence was within sentencing range for aggravated sexual assault and therefore no egregious harm was shown)

"In determining whether appellant was egregiously harmed, the harm which we must consider is the impact of the omission of a reasonable doubt instruction concerning the unadjudicated offenses." *Martinez*, 313 S.W.3d at 369–70. Based on our review of the record and the *Almanza* factors, we cannot conclude that Roland was denied a fair and impartial trial in the jury's determination assessing a sentence of 45 years in prison. We overrule Roland's first issue.

## II. Sufficiency of the evidence of costs

In his second issue, Roland argues that the evidence is insufficient to support the assessment of $284 in statutory court costs.

A supplemental clerk's record was filed in this case with a "J.I.M.S. Cost Bill Assessment." Roland filed an objection to the supplemental clerk's record on

the grounds that it was not a cost bill, supplementation of the record was improper, and there was no evidence that this document was ever presented to the trial court. The Court of Criminal Appeals has rejected all of these arguments. *See Johnson v. State*, No. PD-0193-13, 2014 WL 714736, at *4–7 (Tex. Crim. App. Feb. 26, 2014). Accordingly, we overrule Roland's objection to the supplemental record. *See id.*

Roland further argues that the evidence is insufficient to support the judgment against him assessing court costs of $284.00. "[W]e review the assessment of costs to determine if there is a basis for the cost, not to determine if there was sufficient evidence offered at trial to prove each cost." *Id.* at *2. A defendant convicted of a felony offense must pay certain statutorily mandated costs and fees. *See id.* These fees vary depending on the type of offense and procedural history of the case. *See, e.g.*, *Owen v. State*, 352 S.W.3d 542, 546 n.5 (Tex. App.—Amarillo 2011, no pet.) (providing an extensive list of Texas statutes requiring convicted persons to pay costs and fees). The record demonstrates that Roland was convicted of two felonies in district court, supporting each of the following costs:

(1) $50.00 for executing or processing an issued arrest warrant, capias, or capias pro fine;[1]

---

[1] TEX. CODE CRIM. PROC. ANN. art. 102.011(a)(2) (West Supp. 2013) ("A defendant convicted of a felony or a misdemeanor shall pay the following fees for services performed in the case by a peace officer . . . $50 for executing or processing an issued arrest warrant, capias, or capias pro fine.").

(2)  $5.00 for making an arrest without a warrant;[2]

(3)  $5.00 as a commitment fee;[3]

(4)  $5.00 as a release fee for each release on each case including release to the Texas Department of Criminal Justice;[4]

(5)  $40.00 to the clerk's office;[5]

(6)  $5.00 security fee;[6]

(7)  $133.00 consolidated court cost for conviction of a felony;[7]

(8)  $4.00 jury reimbursement fee;[8]

---

[2]  *Id.* art. 102.011(a)(1) ("$5 for . . . making an arrest without a warrant").

[3]  *Id.* art. 102.001(a)(6) ("A defendant convicted of a felony or a misdemeanor shall pay the following fees for services performed in the case by a peace officer . . . $5 for commitment or release.").

[4]  *Id.*

[5]  *Id.* art. 102.005(a) (West 2006) ("A defendant convicted of an offense in a county court, a county court at law, or a district court shall pay for the services of the clerk of the court a fee of $40.").

[6]  *Id.* art. 102.017(a) (West Supp. 2013) ("A defendant convicted of a felony offense in a district court shall pay a $5 security fee as a cost of court.").

[7]  TEX. LOC. GOV'T CODE ANN. § 133.102(a)(1) (West Supp. 2013) ("A person convicted of an offense shall pay as a court cost, in addition to all other costs . . . $133 on conviction of a felony.").

[8]  TEX. CODE CRIM. PROC. ANN. art. 102.0045(a) (West Supp. 2013) ("A person convicted of any offense, other than an offense relating to a pedestrian or the parking of a motor vehicle, shall pay as a court cost, in addition to all other costs, a fee of $4 to be used to reimburse counties for

(9)  $25.00 district court records preservation fee;[9]

(10) $2.00 for support of indigent defense;[10]

(11) $6.00 for support for the judiciary;[11] and

(12) $4.00 for the court technology fund.[12]

These fees total $284.00, the same amount of costs assessed in the judgment in this

case:

---

[9]      the cost of juror services as provided by Section 61.0015, Government Code.").

[9]      *Id.* art. 102.005(f) ("A defendant convicted of an offense in a . . . district court shall pay a fee of $25 for records management and preservation services performed by the county as required by Chapter 203, Local Government Code.").

[10]     TEX. LOC. GOV'T. CODE ANN. § 133.107(a) (West Supp. 2013) ("A person convicted of any offense, other than an offense relating to a pedestrian or the parking of a motor vehicle, shall pay as a court cost, in addition to other costs, a fee of $2 to be used to fund indigent defense representation through the fair defense account established under Section 79.031, Government Code.").

[11]     *Id.* § 133.105(a) (West 2008) ("A person convicted of any offense, other than an offense relating to a pedestrian or the parking of a motor vehicle, shall pay as a court cost, in addition to all other costs, a fee of $6 to be used for court-related purposes for the support of the judiciary.").

[12]     TEX. CODE CRIM. PROC. ANN. art. 102.0169(a) (West Supp. 2013) ("A defendant convicted of a criminal offense in a . . . district court shall pay a $4 county and district court technology fee as a cost of court.").

17

$ 133.00 (consolidated court cost for conviction of a felony)
$  50.00 (arrest fee)
$  40.00 (clerk's office fee)
$  25.00 (district court records preservation fee)
$  6.00 (support for the judiciary fee)
$  5.00 (making arrest without a warrant)
$  5.00 (release fee)
$  5.00 (commitment fee)
$  5.00 (security fee)
$  4.00 (jury reimbursement fee)
$  4.00 (court technology fund)
$  2.00 (support of indigent defense fee)
_____
$ 284.00

Accordingly, we hold that the record demonstrates the basis for the court costs assessed by the trial court. *See Johnson*, 2014 WL 714736, at *2, 7.

## Conclusion

We affirm the judgment of the trial court.


Michael Massengale
Justice

Panel consists of Chief Justice Radack and Justices Massengale and Huddle.

Do not publish. TEX. R. APP. P. 47.2(b).

18