**Opinion issued July 16, 2013**



**In The**

# Court of Appeals

**For The**

# First District of Texas

————————————

**NO. 01-11-00867-CR**

**NO. 01-11-00868-CR**

————————————

**RAMON P. ANGUIANO, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 262nd District Court**
**Harris County, Texas**
**Trial Court Case Nos. 1290771 & 1290772**

---

**MEMORANDUM OPINION**

A jury convicted appellant, Ramon P. Anguiano, of two counts of the first-

degree felony offense of aggravated sexual assault of a child and assessed

punishment at confinement for life in both cases.[1]   In two issues, appellant contends that (1) the trial court erroneously failed to instruct the jury at the punishment phase that it could only consider evidence of extraneous offenses if it found beyond a reasonable doubt that appellant had committed the offenses; and (2) the trial court erroneously failed, in trial court cause number 1290772, to instruct the jury that it could consider recommending community supervision.

We affirm.

## Background

On April 17, 2010, appellant, his wife, Elizabeth, their son, and their thirteen-year-old daughter, the complainant, E.A., arrived at their house after attending a party.  Shortly after they returned home, appellant and E.A. had an argument, and appellant took E.A.'s cellphone away from her.  E.A. started crying.  She later found Elizabeth in her bathroom and told her that she needed to talk to her.  E.A. told Elizabeth that, starting when she was around six years old, appellant would occasionally touch E.A. inappropriately while Elizabeth was at work.  This conduct included forcing E.A. to engage in vaginal intercourse.  E.A. reported that these incidents had occurred at their house, at the parking lot of a nearby store, and under a bridge close to their house.  Elizabeth believed E.A. was telling the truth,

---

[1]   *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i), (iii) (Vernon Supp. 2012).  Trial court cause number 1290771 resulted in appellate cause number 01-11-00867-CR. Trial court cause number 1290772 resulted in appellate cause number 01-11-00868-CR.

and she went to confront appellant. Appellant denied the allegations, but E.A. insisted that he had assaulted her. E.A., Elizabeth, and appellant were all crying, and, at one point during the confrontation, appellant went to his bedroom and returned with a pistol. Because Elizabeth was afraid that appellant would kill either them or himself, she left the house with E.A. and her son, and they stayed with her daughter from her previous marriage, S.G.

E.A., who was born in April 1997, testified that appellant first touched her inappropriately when she was around five or six years old. On this occasion, E.A. was sitting with appellant in a truck parked in a parking lot, and he asked her if she wanted to "drive" the truck. She said yes, and appellant told her to sit on his lap. Appellant started rubbing her thighs, but he did not take off his clothing or her clothing, and he did not touch anything other than E.A.'s thighs.

E.A. testified that the next incident happened in 2006. Appellant walked into E.A.'s bedroom, kneeled down beside her bed, and had a conversation with her concerning the family's new dog. During this conversation, appellant reached under the covers and began touching E.A. on her inner thighs. He then reached under her pajamas and digitally penetrated her. Appellant told her to keep this incident a secret.

The next incident occurred when E.A. and appellant were watching a movie in appellant's bedroom. Appellant asked E.A. to touch his sexual organ. She

3

initially refused, and appellant grabbed her hand, put it down his pants, and moved it up and down. E.A. eventually "yanked" her hand away. Appellant told her not to tell Elizabeth because she "wouldn't be happy" and their family "would be destroyed."

The last incident that E.A. described occurred under a bridge near their house. Appellant, E.A., and her brother walked over to the bridge, and appellant told his son to ride his bike around because he was going to show E.A. the fish in the creek. Appellant took E.A. down near the water, turned her around, and told her to open her legs. Appellant pulled her pants and underwear down and engaged in vaginal intercourse. E.A. could not provide a specific date or even a time of year for this occurrence, but she estimated that she was "around ten," and she agreed that she turned ten years old in April 2007. E.A. stated that appellant touched her inappropriately on other occasions as well, but those events were more difficult to remember.

The State charged appellant with two counts of aggravated sexual assault of a child. The first count, trial court cause number 1290771, alleged that on or about June 15, 2001, appellant caused the penetration of E.A.'s sexual organ by placing his finger in her sexual organ. The second count, trial court cause number 1290772, alleged that on or about July 20, 2009, appellant caused E.A.'s sexual

4

organ to contact his sexual organ. The jury ultimately found appellant guilty of both of these counts.

The prosecutor began the punishment phase by telling the jury, "The most important part of the trial is coming up, and I want to let you know that [E.A.] was not this Defendant's first victim." The State called S.G., Elizabeth's daughter from her previous marriage, who was twenty-nine at the time of appellant's trial. S.G. testified that she met appellant when she was nine, when he started dating Elizabeth. S.G. stated that, when she was nine or ten, after Elizabeth had gone to work early in the morning, appellant woke her up and touched her vagina. S.G. testified that she could remember "another few times" where appellant "did the same thing." On later occasions, appellant would come into S.G.'s room wearing only a towel, carry her into his bedroom, and attempt vaginal intercourse.

On cross-examination, S.G. acknowledged that she never liked appellant, at first "because he wasn't [her] dad." When asked if she had told anyone about the alleged abuse, S.G. responded that she did not tell anyone for a long time "because [appellant] would tell [her], you know, not to say anything because then [she] and [her] mom and [her] brother were going to be living under a bridge and, you know, having nothing." S.G. also stated that she did not tell anyone about appellant's conduct until after E.A. made her outcry because she was scared and afraid that no one would believe her.

5

The State also called A.G., Elizabeth's niece, who was thirty-one at the time of appellant's trial. A.G. testified that appellant behaved inappropriately with her when she was between the ages of ten and thirteen. On one occasion, appellant tried to force her to kiss him, but he did not attempt to do anything else at that time. On another occasion, A.G. was visiting appellant and Elizabeth's house and, while she was lying on a bed and watching television, appellant attempted digital penetration. On cross-examination, A.G. stated that, when she was twenty-one or twenty-two, she told her mother about what had happened with appellant, but she ultimately decided not to pursue any charges. She denied ever making false accusations against appellant.

Appellant testified on his own behalf and denied ever abusing E.A., S.G., or A.G. He theorized that S.G. was accusing him "[b]ecause she's always been very angry" and she had never liked him. He opined that A.G. was angry at him because she had once asked Elizabeth for a $2,500 loan and appellant had refused. He also stated that E.A. lied during her testimony in the guilt-innocence phase "[b]ecause she's angry." He stated that all three witnesses were lying and were "in cahoots."

Appellant testified that he had never been previously convicted of a felony. He requested that the jury recommend that he be placed on probation. The following exchange then occurred with his counsel:

6

[Defense counsel]: Now, you know the jury can only give you probation on the one [count, presumably referring to cause number 1290771,] and not on the other one; you know that, don't you?

[Appellant]: Yes.

The punishment phase charge did not include an instruction informing the jury that it could only consider the evidence of appellant's extraneous offenses against S.G. and A.G. if it found beyond a reasonable doubt that appellant had committed those offenses. The charge for cause number 1290771 included an instruction stating that the jury could recommend community supervision. The charge for cause number 1290772 did not include this instruction. Defense counsel stated that he had no objections to the charge.

In closing argument, defense counsel focused on the fact that S.G. and A.G. both kept quiet about appellant's conduct until nearly twenty years after the incidents allegedly occurred. He argued that it did not make sense for S.G., in particular, to fail to report the alleged abuse, given her longstanding dislike for appellant. Defense counsel also stated that in the "older case," referring to cause number 1290771, the jury could give appellant probation. He then stated that cause number 1290772 "is a little different" because the law changed in 2007 "and now he cannot get probation from anybody, really, the Judge or the jury." Defense counsel asked the jury to recommend community supervision for cause number

1290771 and to assess the minimum punishment, five years' confinement, for cause number 1290772.

The State reminded the jury of A.G.'s and S.G.'s testimony, arguing that the jury heard A.G. "testify that years ago he did the same exact thing, very similar thing that he intended to do to [S.G.] and that he eventually did to [E.A.]" The State reiterated that E.A. is appellant's biological daughter and that he forced her to have intercourse. The State noted that, when he testified, appellant called E.A., A.G., and S.G. liars, and he did not accept any responsibility for his actions. The State then rhetorically asked,

> And do you know what happens when you molest three children? You know what happens when you stick your fingers in the vagina of three children over a period of 20 years? Do you know what happens when you put your penis into the vagina of a small child? You know what that makes you? That makes you a serial child molester.

The State called appellant a "serial child molester" on several occasions and argued that appellant posed a future danger to the children of Harris County. The State asked for the maximum punishment of life imprisonment.

The jury ultimately assessed punishment at confinement for life on both counts, and the trial court ordered these sentences to run concurrently.

**Charge Error**

In his first issue, appellant contends that the trial court erroneously failed to instruct the jury that it could consider evidence of extraneous offenses and bad acts

8

when assessing punishment only if it found beyond a reasonable doubt that appellant had committed those acts.  In his second issue, appellant contends that the trial court erroneously failed, in cause number 1290772, to instruct the jury that it could consider recommending community supervision.

### A.      Standard of Review

We use a two-step process in reviewing jury charge error.  *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005).  First, we determine whether error exists in the charge.  *Id.*  If error does exist, we review the record to determine whether the error caused sufficient harm to require reversal of the conviction.  *Id.*  When, as here, the defendant fails to object or states that he has no objection to the charge, we will not reverse for jury-charge error unless the record shows "egregious harm" to the defendant.  *Id.* at 743–44; *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984).  Under this standard, we examine the entire record to determine whether the error was so egregious and created such harm that the defendant did not receive a fair and impartial trial.  *Allen v. State*, 47 S.W.3d 47, 50–51 (Tex. App.—Fort Worth 2001, pet. ref'd) (citing *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996)); *see also Martinez v. State*, 313 S.W.3d 358, 365 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) (stating same).

## B.  *Extraneous Offense Instruction*

Code of Criminal Procedure article 37.07 section 3(a)(1) provides that, at the punishment phase,

> evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to . . . evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act.

TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (Vernon Supp. 2012).  The Court of Criminal Appeals has held that the plain language of this provision "requires that such evidence may not be considered in assessing punishment until the fact-finder is satisfied beyond a reasonable doubt that [the extraneous bad acts and offenses] are attributable to the defendant." *Huizar v. State*, 12 S.W.3d 479, 481 (Tex. Crim. App. 2000) (quoting *Fields v. State*, 1 S.W.3d 687, 688 (Tex. Crim. App. 1999)).  Once this requirement is met, the fact finder may use the extraneous offense evidence however it chooses in assessing punishment. *Id.* at 484.

At the punishment phase of a trial, the reasonable-doubt standard is applicable in deciding whether to consider certain evidence in assessing the sentence. *Id.* at 482.  Without a reasonable-doubt instruction, "the jury might apply a standard of proof less than reasonable doubt in its determination of the

10

defendant's connection to such offenses and bad acts, contrary to section 3(a)." *Id.* at 484. Thus, when the State introduces evidence of extraneous offenses and bad acts during the punishment phase, the trial court has the duty to sua sponte instruct the jury that it may only consider such evidence if it finds beyond a reasonable doubt that the defendant committed the bad acts. *See id.*; *Martinez*, 313 S.W.3d at 365 (holding that trial court has this duty regardless of whether defendant requests instruction). The trial court's failure to give such an instruction is error. *Tabor v. State*, 88 S.W.3d 783, 788 (Tex. App.—Tyler 2002, no pet.); *Allen*, 47 S.W.3d at 50. In this case, the State concedes that the trial court erred when it failed to include a reasonable-doubt instruction concerning extraneous offenses in the punishment-phase charge.

The trial court's failure to include this instruction in the punishment-phase charge is non-constitutional error subject to the appropriate harm analysis under *Almanza*. *See Huizar*, 12 S.W.3d at 484–85. In determining whether the defendant has suffered actual egregious harm, we consider "the entire jury charge, the state of the evidence, including contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Huizar v. State*, 29 S.W.3d 249, 251 (Tex. App.—San Antonio 2000, pet. ref'd) (quoting *Almanza*, 686 S.W.2d at 171). Jury charge error is egregiously harmful if "it affects the very basis of the case, deprives

11

the defendant of a valuable right, or vitally affects a defensive theory." *Martinez*, 313 S.W.3d at 367 (quoting *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007)). Harm to the defendant must be actual, not merely theoretical. *See id.*

In *Huizar*, on remand from the Court of Criminal Appeals, the San Antonio Court of Appeals held that it could not "conclude that Huizar was denied a fair and impartial trial" as a result of the trial court's failure to give a reasonable-doubt instruction. 29 S.W.3d at 251. The court noted that the State "relied on substantial evidence of extraneous conduct in seeking punishment" and that the prosecutor stated during the punishment-phase closing argument that "the State had no burden of proof during the punishment trial." *Id.* at 250. The court further noted that although Huizar's ninety-nine year sentence "may seem to be egregious harm that requires reversal," that sentence was within the permissible statutory punishment range for aggravated sexual assault of a child. *Id.* at 251; *Tabor*, 88 S.W.3d at 789 (noting that assessed punishment was "well within the punishment range for the offense" and declining "to speculate that Appellant received a longer sentence than he would have had the instruction been included"). The trial court's failure, therefore, did not cause egregious harm. *Huizar*, 29 S.W.3d at 251.

Here, S.G. testified that, when she was nine or ten, appellant, her step-father, came into her bedroom after Elizabeth had gone to work and touched her vagina. Appellant "did the same thing" "another few times," and he eventually attempted

vaginal intercourse with S.G. A.G. testified that, after an incident in which appellant tried to kiss her, she was watching television at appellant's house when he attempted digital penetration. E.A.'s testimony indicates that appellant's actions with her mirrored his prior actions with S.G. and A.G. She testified that appellant, her father, began inappropriately touching her when she was around five years old and that, over the years, his behavior progressed from inappropriate-but-not-illegal touching—rubbing her thighs while they were sitting in their truck—to digital penetration and forcing her to touch his sexual organ. Ultimately, appellant forced her to have vaginal intercourse when she was "around ten" years old. E.A.'s testimony was clear, direct, and unimpeached, and the testimony from Elizabeth, the forensic interviewer, and the doctor who examined E.A. reflects that her account of events remained consistent.

On cross-examination of S.G. and A.G., defense counsel focused on possible motives for fabricating their testimony—S.G.'s longstanding dislike of appellant and appellant's refusal to lend A.G. $2,500—and on their failure to disclose the alleged sexual assaults until after E.A. made her outcry. Both S.G. and A.G. reiterated that appellant had sexually assaulted them. Appellant testified on his own behalf at the punishment phase and denied all of the accusations against him, opining that E.A., S.G., and A.G. were all lying and were "in cahoots."

Although the charge did not include the required beyond-a-reasonable doubt instruction regarding the extraneous offenses, it did instruct the jury that "[t]he burden of proof in all criminal cases rests upon the State throughout the trial and never shifts to the defendant."[2] *See Martinez*, 313 S.W.3d at 367 (concluding, when charge at issue contained similar instruction but no beyond reasonable doubt instruction, that charge itself weighed neither for nor against egregious harm finding). The charge also instructed the jury that it "may take into consideration all the facts shown by the evidence admitted before you in the full trial of this case," and it reminded the jury that it was the exclusive judge of the facts, the credibility of the witnesses, and the weight to give their testimony. As in *Martinez*, this charge, therefore, neither weighs in favor nor against a finding of egregious harm. *See id.*

During his argument, defense counsel focused on the same facts that he had focused on when cross examining S.G. and A.G.: their reasons to dislike appellant and their failure to report his actions until after E.A.'s outcry. Defense counsel asked the jury to recommend community supervision in trial court cause number 1290771 and to assess the minimum amount of confinement, five years, for trial court cause number 1290772. The record also reflects that defense counsel

---

[2]  Unlike in *Huizar*, the State here did not say that it had no burden of proof at all at the punishment phase. *See Huizar v. State*, 29 S.W.3d 249, 250 (Tex. App.—San Antonio 2000, pet. ref'd) (noting that prosecutor made this statement during punishment phase argument, but still finding no egregious harm).

vigorously defended appellant, cross-examining each of the State's witnesses and calling witnesses to testify on appellant's behalf. *See Allen*, 47 S.W.3d at 51 (considering whether defense counsel "vigorously defended" defendant when conducting egregious-harm analysis).

In its argument, the State informed the jury that it should consider four things when assessing punishment: (1) appellant's prior bad acts; (2) the facts of the charged case; (3) any mitigation evidence; and (4) future danger to society. *See Freeman v. State*, 340 S.W.3d 717, 727 (Tex. Crim. App. 2011) (stating that proper jury argument consists of (1) summation of evidence; (2) reasonable deductions from evidence; (3) answers to arguments by opposing counsel; and (4) pleas for law enforcement); *see also* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (stating admissible evidence during punishment phase includes "any matter the court deems relevant to sentencing," including circumstances of offense for which defendant is being tried and extraneous crimes or bad acts). The State reminded the jury of S.G. and A.G.'s testimony. The State referred to appellant as a "serial child molester" four times during argument, and it argued that the fact that appellant had sexually assaulted three children over a twenty-year period indicated that he presented a future danger to the children of Harris County. *See Freeman*, 340 S.W.3d at 727 (stating that making reasonable deduction from evidence is permissible jury argument). The State also reminded the jury that E.A. is

appellant's biological daughter and that, in addition to digitally penetrating E.A., which he also did to S.G. and attempted to do to A.G., he actually forced E.A. to have intercourse. *See id.* (stating that summation of evidence is permissible jury argument). The State also called attention to appellant's testimony that everyone involved with the case was lying, and it argued that he "accepts no responsibility" and that no mitigating factors were present in the case. The State argued that life imprisonment was the appropriate punishment for this case. *See Martinez*, 313 S.W.3d at 369 (noting that, although State used extraneous offenses to "create a pattern of appellant 'getting progressively more and more violent'" and asked for life sentence to "protect [the jury] and all of us from him," State did not rely solely on extraneous offense evidence in arguing for life sentence).

The jury assessed punishment at confinement for life for both offenses, which is the maximum allowable punishment. However, the imposition of the maximum punishment does not require a finding that appellant suffered egregious harm. *See Huizar*, 29 S.W.3d at 251 (noting that although ninety-nine year sentence in aggravated sexual assault of child case "may seem to be egregious harm that requires reversal," this sentence was within permissible statutory punishment range); *see also Martinez*, 313 S.W.3d at 369 (holding that "maximum punishment alone does not indicate egregious harm" and that "[t]here is no

egregious harm if the jury would still have assessed a life sentence, even if properly instructed . . . .").

Although the State emphasized the extraneous offenses when it argued that life imprisonment was an appropriate punishment, we cannot say that the facts of the charged case alone do not warrant the imposition of such a severe sentence. Given E.A.'s age when the sexual abuse began, the relationship between appellant and E.A., the continuing nature of the abuse, and the escalation of appellant's conduct, which ultimately culminated in appellant forcing E.A., his daughter, to engage in vaginal intercourse when she was around ten years old, we cannot conclude, based on these facts, that the trial court's failure to include a beyond-a-reasonable-doubt instruction concerning the extraneous offenses in the punishment-phase charge caused appellant egregious harm. *See Sansom v. State*, 292 S.W.3d 112, 134 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd) (considering severity of charged offense and age of complainants when finding failure to give beyond reasonable doubt instruction did not constitute egregious harm); *see also Bargas v. State*, 252 S.W.3d 876, 888 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (holding that testimony of victim of aggravated sexual assault of child by itself is sufficient to support conviction).

We conclude that appellant was not egregiously harmed by the trial court's error.

17

We overrule appellant's first issue.

## C.      *Community Supervision Instruction*

Code of Criminal Procedure article 42.12, section 4 provides:

> A jury that imposes confinement as punishment for an offense may recommend to the judge that the judge suspend the imposition of the sentence and place the defendant on community supervision. A judge shall suspend the imposition of the sentence and place the defendant on community supervision if the jury makes that recommendation in the verdict.

TEX. CODE CRIM. PROC. ANN. art. 42.12, § 4(a) (Vernon Supp. 2012). Prior to September 1, 2007, article 42.12, section 4(d) provided four specific ways in which a defendant could be ineligible for jury-recommended community supervision, none of which are applicable here. Acts 1965, 59th Leg., ch. 722, *amended by* Act of May 18, 2007, 80th Leg., R.S., ch. 593, §1.05, 2007 Tex. Gen. Laws 1120, 1123.

In 2007, the Texas Legislature added the following restriction to a defendant's eligibility for jury-recommended community supervision: "A defendant is not eligible for community supervision under this section if the defendant . . . is convicted of an offense listed in Section 3g(a)(1)(C), (E), or (H), if the victim of the offense was younger than 14 years of age at the time the offense was committed." Act of May 18, 2007, 80th Leg., R.S., ch. 593, § 1.05, 2007 Tex. Gen. Laws 1120, 1123 (current version at TEX. CODE CRIM. PROC. ANN. art. 42.12, § 4(d)(5)). Code of Criminal Procedure article 42.12, section 3g(a)(1)(E) refers to

18

aggravated sexual assault.  *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 3g(a)(1)(E).  The Legislature provided that this change in law "applies only to an offense committed on or after September 1, 2007."  Act of May 18, 2007, 80th Leg., R.S., ch. 593, § 4.01(a), 2007 Tex. Gen. Laws 1120, 1148.

The State is not required to allege in the indictment a specific date for the commission of the charged offense.  *See Sledge v. State*, 953 S.W.2d 253, 255 (Tex. Crim. App. 1997).  It is "well settled" that the "on or about" language used in the indictment "allows the State to prove a date other than the one alleged in the indictment as long as the date is anterior to the presentment of the indictment and within the statutory limitation period."  *Id.* at 256; *Grimes v. State*, 135 S.W.3d 803, 811 n.5 (Tex. App.—Houston [1st Dist.] 2004, no pet.).  There is no limitations period for aggravated sexual assault of a child.  *See* TEX. CODE CRIM. PROC. ANN. art. 12.01(1)(B) (Vernon Supp. 2012).

The trial court must charge the jury fully and affirmatively on the law applicable to every issue raised by the evidence.  *See Ponce v. State*, 89 S.W.3d 110, 118 (Tex. App.—Corpus Christi 2002, no pet.).  For the defendant to be entitled to the submission of the community supervision issue to the jury, in addition to the defendant's filing of a written sworn motion pursuant to article 42.12, section 4(e), record evidence must support the defendant's eligibility for probation.  *See Beyince v. State*, 954 S.W.2d 878, 880 (Tex. App.—Houston [14th

19

Dist.] 1997, no pet.); *Green v. State*, 658 S.W.2d 303, 309 (Tex. App.—Houston [1st Dist.] 1983, pet. ref'd) ("The jury need not be charged on the issue of probation in the absence of evidence before the jury to support the motion for probation."). In this case, to establish appellant's eligibility for community supervision, record evidence must support a conclusion that appellant committed the charged offense before September 1, 2007.

The indictment for trial court cause number 1290772 alleged that appellant "on or about JULY 20, 2009, did then and there unlawfully, intentionally and knowingly cause the sexual organ of [E.A.], a person younger than fourteen years of age and not the spouse of the Defendant, to CONTACT the SEXUAL ORGAN of THE DEFENDANT." E.A. testified that appellant forced her to have vaginal intercourse under a bridge located near their house. E.A. testified that she was born in April 1997, and she agreed that she turned ten years old in April 2007. She stated that she believed she was "[a]bout ten" when this incident under the bridge occurred. She did not provide a specific date or the time of year that this incident occurred.

Based on this evidence presented, it is equally likely that this particular incident occurred before September 1, 2007, as it is that it occurred after September 1, 2007. We therefore conclude that the trial court erroneously failed to

instruct the jury that community supervision was a punishment option in cause number 1290772.

We also conclude, however, that this error did not cause egregious harm to appellant. In cause number 1290771, which alleged that appellant sexually assaulted E.A. by digital penetration, the trial court properly instructed the jury that it could consider recommending community supervision. The jury rejected this punishment option, and it instead assessed punishment for that offense at confinement for life. There is no indication that, had the jury been informed that it could consider recommending community supervision in cause number 1290772, the jury would have assessed any punishment other than that it actually did assess: confinement for life. Furthermore, because the trial court ordered that appellant's two sentences are to run concurrently, even if the jury had recommended community supervision in cause number 1290772, appellant would still have to serve a life sentence for cause number 1290771. Thus, the trial court's failure caused no actual harm to appellant. *See Durden v. State*, 290 S.W.3d 413, 420 (Tex. App.—Texarkana 2009, no pet.) ("The harm must be actual and not just theoretical."); *see also Taylor v. State*, 332 S.W.3d 483, 489–90 (Tex. Crim. App. 2011) (noting that, when conducting egregious-harm analysis, courts consider any part of record "which may illuminate the actual, not just theoretical, harm to the accused") (quoting *Almanza*, 686 S.W.2d at 174).

We therefore hold that any error committed by the trial court when it failed to instruct the jury that it could consider recommending community supervision in trial court cause number 1290772 did not cause egregious harm to appellant.

We overrule appellant's second issue.

## Conclusion

We affirm the judgment of the trial court.


Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Sharp, and Huddle.

Justice Sharp, concurring in the judgment only.

Do Not Publish. TEX. R. APP. P. 47.2(b).