**Affirmed and Memorandum Opinion filed December 17, 2015.**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-14-00874-CR

_____

**CHARLES ROBERTS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 177th District Court
Harris County, Texas
Trial Court Cause No. 1381559**

## MEMORANDUM OPINION

We consider three issues in this appeal from a conviction for murder: (1) whether the trial court abused its discretion by admitting evidence of a prior conviction, (2) whether defense counsel rendered ineffective assistance by failing to object that appellant was in shackles during the punishment phase of trial, and (3) whether the trial court reversibly erred when it failed to give a reasonable-doubt instruction for unadjudicated bad acts. We overrule each issue and affirm the trial court's judgment.

# BACKGROUND

The complainant in this case died of a single gunshot wound to the abdomen. His body was found inside of his vehicle, parked just outside of a grocery store. The shooter left no physical evidence at the scene, and there were no eyewitnesses or surveillance footage of the shooting.

Police came to suspect that appellant may have been involved in the murder. Text messages revealed that the complainant had gone to the grocery store to sell appellant two ounces of hydroponic marijuana. Phone records also showed that appellant was within range of a cell phone tower next to the grocery store at the time of the shooting.

Appellant turned himself in to police when he learned that a warrant had issued for his arrest. Before he was released on bond, appellant encountered a family acquaintance in jail. The acquaintance wrote a letter to his jailors, claiming that appellant had confessed to killing a man for two ounces of hydroponic marijuana.

At trial, appellant admitted that he had spoken with the acquaintance in jail, but he denied having made a confession of murder. Appellant further admitted that he had gone to the grocery store to purchase the hydroponic marijuana, but he testified that he left without completing the transaction because he did not trust the complainant. According to appellant, the complainant was not alone like he had said he would be, and the complainant was in a different vehicle than what he had previously described.

The jury rejected appellant's testimony, convicted him of murder, and assessed his punishment at fifty years' imprisonment.

## PRIOR CONVICTION

Before appellant took the stand, the trial court conducted a hearing outside the presence of the jury to determine if there were any "impeachable priors" at issue. Appellant stated that, although he had no felonies on his record, he did have two misdemeanor convictions for assault and another conviction for possession of marijuana. Because one of the assault convictions involved a family member, the State argued that it constituted a crime involving moral turpitude.

Appellant personally explained to the trial court that the assault was just a fight between him and his father. Appellant's defense counsel then argued that, to whatever extent the evidence of the assault conviction was relevant, the trial court should exclude it because it was more prejudicial than probative. The trial court determined that the evidence of the assault conviction was admissible, and the State impeached appellant with that evidence at the end of appellant's cross-examination.

In his first issue, appellant argues that the trial court abused its discretion by admitting the evidence of his assault conviction. Appellant argues that this evidence was inadmissible under Rule 609 of the Texas Rules of Evidence because an assault against a man is not considered a crime involving moral turpitude. The State responds that this complaint has not been preserved. We agree with the State.

To preserve a complaint for appellate review, the record must show that the complaint was made to the trial court by a timely objection, stating the grounds for the ruling sought with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context. *See* Tex. R. App. P. 33.1(a). The purpose for requiring a timely, specific objection is twofold: (1) it informs the judge of the basis of the objection, affording the judge an opportunity to rule on it; and (2) it gives opposing counsel an opportunity to

3

respond to the complaint. *See Resendez v. State*, 306 S.W.3d 308, 312 (Tex. Crim. App. 2009). Although we are not hyper-technical in our examination of whether error was preserved, we do adhere to the general rule that the argument on appeal must comport with the objection made at trial. *See Bekendam v. State*, 441 S.W.3d 295, 300 (Tex. Crim. App. 2014).

Here, the only legal objection asserted at trial was that the evidence of the assault was more prejudicial than probative. This objection did not put the trial court on notice of the complaint appellant now asserts on appeal—that the assault was not a crime involving moral turpitude. We conclude that appellant's argument on appeal does not comport with the objection he made at trial, and thus, his complaint has not been preserved for appellate review. *Cf. Douds v. State*, No. PD-0857-14, — S.W.3d —, 2015 WL 5981121, at *4–5 (Tex. Crim. App. Oct. 14, 2015) (defendant's trial argument that the requirements of a mandatory blood-draw statute had not been met did not preserve a constitutional complaint on appeal that the blood draw violated the Fourth Amendment where there was no showing of exigent circumstances).

## SHACKLES

Appellant took the stand during the punishment phase of trial, wearing shackles or leg irons. Defense counsel did not object to appellant being in any kind of restraints. At the end of appellant's testimony, both sides rested and the jury was removed from the courtroom. The trial court then put the following comments on the record:

> All right. I also want the record to reflect that once the—once the Defendant was found guilty, it's the deputy's policy to put him in leg irons. And when he was called to testify here in punishment, he got up and his legs [sic] irons started banging around and clanking

4

when he started walking to the witness stand before I had a chance to admonish him or the jury on that.

So I assume the jury may have seen that he had leg irons, but he basically got up and started walking toward the box before I had a chance to say anything. So made that kind of issue moot.

Appellant now argues in his second issue that he received ineffective assistance of counsel because defense counsel did not object to appellant being in shackles while in the presence of the jury. We review claims of ineffective assistance of counsel under the standard set forth in *Strickland v. Washington*, 466 U.S. 688 (1984). Under *Strickland*, the defendant must prove that his trial counsel's representation was deficient, and that the deficient performance was so serious that it deprived him of a fair trial. *Id.* at 687. Counsel's representation is deficient if it falls below an objective standard of reasonableness. *Id.* at 688. A deficient performance will only deprive the defendant of a fair trial if it prejudices the defense. *Id.* at 691–92. To demonstrate prejudice, there must be a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694. Failure to make the required showing of either deficient performance or sufficient prejudice defeats the claim of ineffectiveness. *Id.* at 697. This test is applied to claims arising under both the United States and Texas Constitutions. *See Hernandez v. State*, 726 S.W.2d 53, 56–57 (Tex. Crim. App. 1986).

Our review of defense counsel's performance is highly deferential, beginning with the strong presumption that counsel's actions were reasonably professional and were motivated by sound trial strategy. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). When the record is silent as to counsel's strategy, we will not conclude that the defendant received ineffective assistance unless the challenged conduct was "so outrageous that no competent attorney

would have engaged in it." *See Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). Rarely will the trial record contain sufficient information to permit a reviewing court to fairly evaluate the merits of such a serious allegation. *See Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). In the majority of cases, the defendant is unable to meet the first prong of the *Strickland* test because the record on direct appeal is underdeveloped and does not adequately reflect the alleged failings of trial counsel. *See Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007).

A sound trial strategy may be imperfectly executed, but the right to effective assistance of counsel does not entitle a defendant to errorless or perfect counsel. *See Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006). Isolated instances in the record reflecting errors of omission or commission do not render counsel's performance ineffective, nor can ineffective assistance of counsel be established by isolating one portion of counsel's performance for examination. *See Ex parte Welborn*, 785 S.W.2d 391, 393 (Tex. Crim. App. 1990). Moreover, it is not sufficient that the defendant show, with the benefit of hindsight, that counsel's actions or omissions during trial were merely of questionable competence. *See Mata*, 226 S.W.3d at 430. Rather, to establish that counsel's acts or omissions were outside the range of professionally competent assistance, the defendant must show that counsel's errors were so serious that he was not functioning as counsel. *See Patrick v. State*, 906 S.W.2d 481, 495 (Tex. Crim. App. 1995).

Shackles are "inherently prejudicial" when used conspicuously in front of the jury. *See Holbrook v. Flynn*, 475 U.S. 560, 568 (1986). During the guilt phase of trial, they can undermine the presumption of innocence, interfere with the defendant's ability to communicate with his counsel, and affront the dignity and decorum of the judicial process. *See Deck v. Missouri*, 544 U.S. 622, 630–31

6

(2005). Related concerns are implicated in the punishment phase as well. Shackles can threaten the accuracy of reliable decisionmaking, especially in capital cases, by suggesting to the jury that the defendant is a danger to the community. *Id.* at 632–33. Due process accordingly forbids the routine use of shackles that are visible to the jury, except in "special circumstances," such as where there are case-specific security needs or a risk of escape. *Id.* at 633. Even in such circumstances, the trial court must make all efforts to prevent the jury from seeing the defendant in shackles. *See Bell v. State*, 415 S.W.3d 278, 281 (Tex. Crim. App. 2013).

Here, the record does not reflect any special circumstances that would justify the use of shackles. The trial court commented that shackles were employed pursuant to a "policy" of restraining the defendant once he has been found guilty, which actually suggests the absence of special circumstances.[1]

Assuming for the purposes of argument that there was no reason for appellant's compelled restraint, the record does not reflect defense counsel's reasons for failing to object to the shackles. Appellant did not move for a new trial, and defense counsel did not file an affidavit or otherwise explain his tactics or reasoning.

The State argues that defense counsel may have willfully chosen to allow appellant to take the stand in shackles in an effort to elicit the jury's sympathy and obtain a more lenient sentence. This explanation would be consistent with the sole theme of appellant's statements on direct examination, which was that the jury had made a mistake and was about to send an innocent man to jail. If that were counsel's strategy, it may have been risky, but not objectively unreasonable. *Cf. Estelle v. Williams*, 425 U.S. 501, 508 (1976) ("[I]t is not an uncommon defense

---

[1] While we question the need for such a "policy," the trial court must be mindful of its obligations to ensure that the shackles are not visible to the jury.

tactic to produce the defendant in jail clothes in the hope of eliciting sympathy from the jury."). On this record, appellant has not overcome the strong presumption that counsel's failure to object was consistent with sound trial strategy. *See Goodspeed*, 187 S.W.3d at 392 (stating that an appellate court should not find deficient performance on a silent record unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it").

## CHARGE ERROR

During the punishment phase, the State elicited testimony of appellant's disciplinary records from when he was in jail. The records showed that appellant had been cited for fighting, disruptive conduct, and threatening another man. Appellant had explanations for each of these citations. On the fighting charge, appellant testified that he and another man were "horseplaying," which he suggested was nonaggressive. As for the disruptive-conduct charge, appellant indicated that he misbehaved because some of his food had been taken after a "shakedown." And as for the threatening charge, appellant explained that he "had some words" with another man who "came into the tank thinking he was running things and changed the TV."

The trial court did not give a reasonable-doubt instruction in its punishment charge as it related to these unadjudicated bad acts. Appellant did not request such an instruction either. Nevertheless, appellant argues in his third issue that the trial court reversibly erred by failing to give the instruction sua sponte.

When deciding whether there is reversible error in a jury charge, we must first determine whether error exists, and if error does exist, we must then determine whether the defendant was harmed by the error. *See Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003). If, as in this case, the defendant did not object to the charge at trial, we can only reverse the trial court's judgment if the

defendant was egregiously harmed by the trial court's error. *See Almanza v. State,* 686 S.W.2d 157, 171 (Tex. Crim. App. 1984).

The State concedes that it was error for the trial court to omit the instruction and we agree. *See Huizar v. State*, 12 S.W.3d 479, 484 (Tex. Crim. App. 2000) (holding that no objection or request is required to receive a reasonable-doubt instruction). However, because appellant did not object to the omission of the instruction, appellant must show that he was egregiously harmed to be entitled to relief. The State contends that appellant cannot meet this difficult burden. We agree here as well.

Any harm that is inflicted by an erroneous charge must be assayed in light of the entire jury charge, the evidence as a whole, the arguments of counsel, and any other relevant information revealed by the record. *See Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007). An error is egregiously harmful only when it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Id*. This is a difficult standard to prove and such a determination must be done on a case-by-case basis. *See Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996).

***The Entire Jury Charge.*** In this case, the punishment charge did not specifically address the unadjudicated bad acts or the burden of proof that must be met before the bad acts could be considered. However, the charge generally informed the jury that "[t]he burden of proof in all criminal cases rests upon the State throughout the trial and never shifts to the defendant." We conclude that this factor is neutral in our assessment of egregious harm. *See Martinez v. State*, 313 S.W.3d 358, 367 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) (examining a punishment charge with identical language).

9

***The Evidence as a Whole.*** The evidence against appellant was largely circumstantial, but the circumstantial evidence was also strong. Phone records established that appellant arranged a meeting with the complainant to purchase two ounces of hydroponic marijuana. The records also established that appellant was near the scene of the crime when the complainant was shot. After his body was found, there were no drugs on the complainant's person, but inside of his car, police discovered the lid to the mason jar that had stored the hydroponic marijuana.

According to a family acquaintance, appellant admitted when he was in jail that he had killed the complainant for the hydroponic marijuana. At trial, appellant tried to discredit the acquaintance by suggesting that the acquaintance could have read about the murder in an online newspaper article. However, there was no evidence that the acquaintance had seen the article, and in his letter to the jailors, the acquaintance specifically mentioned that appellant had shot the complainant over marijuana of the hydroponic variety, a detail that had not been mentioned in the article.

As for his prior convictions, appellant admitted during the guilt phase that he had been convicted of misdemeanor assault, and during the punishment phase, the State introduced evidence of appellant's misdemeanor possession conviction. No reasonable-doubt instruction was required as to these extraneous offenses because they had already been proven in another proceeding. *See Bluitt v. State*, 137 S.W.3d 51, 54 (Tex. Crim. App. 2004).

Also during the punishment phase, the State elicited testimony about appellant's disciplinary record in jail, which was composed of certain unadjudicated bad acts. As mentioned above, appellant admitted to having some level of involvement in each of the bad acts, which weighs against any suggestion that the jury would have disregarded the bad acts had a reasonable-doubt

10

instruction been provided. Considering further the seriousness of the murder charge and the strength of the evidence in support of the murder conviction, the evidence of the unadjudicated bad acts does not make the case for punishment clearly more persuasive. *See Martinez*, 313 S.W.3d at 368.

***The Arguments of Counsel.*** In its closing statements, the State made no reference to appellant's prior bad acts, whether they were adjudicated or unadjudicated. Defense counsel, on the other hand, acknowledged that appellant had "a record of some misconduct," but counsel said that the record was "not egregious." Because neither side emphasized appellant's prior bad acts, this factor weighs against a finding of egregious harm.

***Other Relevant Information.*** We may consider the severity of the punishment assessed, which may indicate egregious harm in some situations. *Id.* Here, appellant was sentenced to fifty years' imprisonment, which is in the midrange for a felony of the first degree. *See* Tex. Penal Code § 12.32. This sentence is slightly higher than the minimum sentence that was advocated by the State, which was forty-five years, but it is also lower than the sentence that the State specifically requested, which was sixty years. Appellant did not argue for a specific term of years. This factor does not weigh greatly in favor of finding egregious harm.

Having considered all of the factors together, we conclude that appellant was not egregiously harmed by the trial court's failure to sua sponte give a reasonable-doubt instruction on the matter of appellant's unadjudicated bad acts.

## CONCLUSION

The trial court's judgment is affirmed.

/s/    Tracy Christopher
Justice

Panel consists of Chief Justice Frost and Justices Christopher and Donovan.
Do Not Publish — Tex. R. App. P. 47.2(b).