PD-1672-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 12/28/2015 9:18:56 AM
Accepted 12/28/2015 1:40:26 PM
ABEL ACOSTA
CLERK

PD-_____

### IN THE COURT OF CRIMINAL APPEALS
### OF THE STATE OF TEXAS

---

### CHARLES ROBERTS
*Petitioner/Appellant*

**v.**

### THE STATE OF TEXAS
*Respondent/Appellee*

---

On Petition for Discretionary Review from the Fourteenth Court of Appeals
in Cause No. 14-14-00874-CR, affirming the conviction in
Cause Number 1381559 from the 177th District Court of Harris County

---

### PETITION FOR DISCRETIONARY REVIEW

---

**ORAL ARGUMENT NOT REQUESTED**

**ALEXANDER BUNIN**
Chief Public Defender
Harris County, Texas

**ANGELA CAMERON**
Assistant Public Defender
Harris County, Texas
Texas Bar No. 00788672
1201 Franklin, 13th Floor
Houston, Texas 77002
Phone: (713) 368-0016
Fax: (713) 368-9278
angela.cameron@pdo.hctx.net

**Counsel for Appellant**

FILED IN
COURT OF CRIMINAL APPEALS

December 28, 2015

ABEL ACOSTA, CLERK

## IDENTITY OF PARTIES AND COUNSEL

APPELLANT:

Charles Roberts #01962903
Telford Unit
3899 Hwy 98
New Boston, Texas 75570

TRIAL PROSECUTORS:

Nathan Hennigan
Assistant District Attorney
Harris County, Texas
1201 Franklin Avenue
Houston, Texas 77002

DEFENSE COUNSEL AT TRIAL:

Ellis McCullough
4008 Louetta Road, Suite 365
Houston, Texas 77388

COUNSEL ON APPEAL FOR APPELLANT:

Angela L. Cameron
Assistant Public Defender
Harris County, Texas
1201 Franklin Ave, 13th Floor
Houston, Texas 77002

PRESIDING JUDGE:

Hon. Ryan Patrick
177th District Court
Harris County, Texas
1201 Franklin Avenue, 19th floor
Houston, Texas 77002

# TABLE OF CONTENTS

Identity of Parties and Counsel........................................................................................ii

Table of Contents..........................................................................................................iii

Index of Authorities...................................................................................................... iv

Statement Regarding Oral Argument............................................................................ 1

Statement of the Case ................................................................................................... 1

Statement of Procedural History ................................................................................. 1

Ground for Review ....................................................................................................... 1

Reason for Review......................................................................................................... 1

Statement of Facts......................................................................................................... 2

Argument........................................................................................................................ 4

Issue for Review ........................................................................................................... 4

Did the Court of Appeals err in failing to address the merits of Mr. Roberts' claim that the trial court erred in allowing Roberts to be impeached with evidence of a previous conviction for assault family violence against his father as being more prejudicial than probative.

PRAYER ...........................................................................................................................6

CERTIFICATE OF SERVICE...............................................................................................6

CERTIFICATE OF COMPLIANCE .......................................................................................7

APPENDIX........................................................................................................................ 8

# INDEX OF AUTHORITIES

## Cases

*Light v. State,* 15 S.W.3d 104 (Tex. Crim. App. 2000) ...................................................... 1, 5

*Roberts v. State*, No. 14-14-00874-CR, 2015 WL 9246779 (Tex. App. – Houston [14th Dist.], December 17, 2015) (mem. op., not designated for publication) ........ 1, 5

*Theus v. State,* 845 S.W.2d 874 (Tex. Crim. App. 1992) ....................................................... 4

## Statutes

Tex. Pen. Code §19.02 ............................................................................................................ 1

## Rules

Tex. R. App. P. 47.1 .............................................................................................................. 5, 6

Tex. R. App. P. 66.3(c) ........................................................................................................... 1

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is not requested.

## STATEMENT OF THE CASE

Mr. Roberts was charged with murder. *See* Tex. Pen. Code §19.02 (C.R. at 15). Roberts entered a plea of "not guilty" (3 R.R. at 8). After a jury trial, Roberts was found guilty and sentenced by a jury to fifty (50) years imprisonment in the Texas Department of Corrections – Institutional Division (C.R. at 199). Timely notice of appeal was filed (C.R. at 202).

## STATEMENT OF PROCEDURAL HISTORY

In an unpublished opinion, the Fourteenth Court of Appeals affirmed Mr. Roberts' conviction. *Roberts v. State*, No. 14-14-00874-CR, 2015 WL 9246779 (Tex. App. – Houston [14th Dist.], December 17, 2015) (mem. op., not designated for publication). No motion for rehearing was filed. This petition is timely if filed on or before January 18, 2016.

## GROUNDS FOR REVIEW

Did the Court of Appeals err in failing to address the merits of Mr. Roberts' claim that the trial court erred in allowing Roberts to be impeached with evidence of a previous conviction for assault family violence against his father as being more prejudicial than probative.

## REASON FOR REVIEW

The Fourteenth Court of Appeals' opinion fails to address every issue raised and necessary to final disposition of Mr. Roberts' appeal contrary to Tex. R. App. Proc. 47.1 and this Court's decision in *Light v. State,* 15 S.W.3d 104, 105 (Tex. Crim. App. 2000). Tex. R. App. P. 66.3(c).

1

On December 31, 2012, Albert Terepo was found shot in the parking lot of a HEB grocery store (4 R.R. at 9 & 11). Terepo died as a result of the gunshot wound he received (5 R.R. at 27-28). There were no eyewitnesses to the shooting, and no useable fingerprints or foreign DNA was found (3 R.R. at 49, 53) (4 R.R. at 19). None of the surveillance cameras at the HEB captured the murder because Terepo's minivan was parked in blind spot outside the view of the cameras (4 R.R. at 37-38). Terepo's cell phone was found at the scene (4 R.R. at 20).

An examination of the cell phone revealed several texts, including texts between Terepo and a person listed as "Lil Chucky" who was later identified as being Appellant, Charles Roberts (4 R.R. at 20-22). The texts indicated Roberts was to meet Terepo at the HEB to buy two ounces of marijuana (4 R.R. at 23-26).

Detectives obtained Roberts' cell phone records through a court order (4 R.R. at 41). The records indicated that within minutes before the shooting, Roberts' cell phone pinged off the cell tower located a quarter mile from the HEB and stated that most towers have a range of distance of two to three miles (4 R.R. at 52-55 & 64). However the officer agreed the tower information was not GPS and could not pinpoint exactly where an individual was when the tower received the signal, only that the phone was within close range of the tower (4 R.R. at 40).

Roberts took the stand on his own behalf. Roberts confirmed he was going to purchase hydro marijuana from Terepo and that he was at HEB shortly before the 911

call was made (5 R.R. at 67-68, 79, 82, 89). Roberts also agreed he was on the phone with Terepo approximately five minutes before 911 was called[1] (5 R.R. at 89).

Roberts testified it was during this phone call he told Terepo he was not willing to complete the purchase (5 R.R. at 95-96). Roberts decided to abandon the transaction because when he arrived at the HEB, Terepo was not alone as Terepo had said he would be, he was driving in a different vehicle than he had told Roberts he would be driving, and Roberts saw an uniformed officer at the HEB gas station, (5 R.R. at 66-68). Roberts testified he never got out of his vehicle, and instead returned home (5 R.R. at 68 & 95). Roberts specifically denied shooting Terepo (5 R.R. at 70).

Roberts turned himself in to authorities the day after he learned there was a warrant for his arrest (5 R.R. at 71). While in the Inmate Processing Center he saw Mark Williams, the father of one of Robert's cousin's children (5 R.R. at 46 & 72). Williams testified Roberts told him that he had committed the murder while the two were at the Inmate Processing Center (4 R.R. at 84-86). Roberts admitted talking to Williams but argued that Williams was lying (5 R.R. at 72, 110-112). Roberts testified there was "bad blood" between Williams and Roberts' family, due in part, to an incident where Roberts' mother had security escort Williams from a trail ride after Williams, Roberts and one of Roberts' cousins got into a physical altercation (5 R.R. at 64-65).

---

[1] The phone records indicate a call between Roberts and Terepo at 5:19 p.m. which lasted 34 seconds, or until 5:20 p.m. (5.R.R. at 89). The testimony at trial was the 911 call reporting the shooting was made at 5:24 p.m. (4 R.R. at 18).

Did the Court of Appeals err in failing to address the merits of Mr. Roberts' claim that the trial court erred in allowing Roberts to be impeached with evidence of a previous conviction for assault family violence against his father as being more prejudicial than probative?

In his first point of error, Roberts argued the trial court abused its discretion in admitting evidence of Roberts' prior conviction for assault family violence against his biological father, for impeachment purposes. Roberts argued first the conviction was not a conviction of moral turpitude because misdemeanor assaults between men have traditionally not been crimes of moral turpitude and the mere finding of a family biological relationship should not transform the conviction into a crime of moral turpitude when Roberts had not seen his father since he was four years old. (Appellant's brief pp. 17-19). Roberts then argued alternatively, the evidence should have been excluded under the probative versus prejudicial analysis in *Theus v. State,* 845 S.W.2d. 874, 880 (Tex. Crim. App. 1992). (Appellant's brief pp. 19-22).

The entirety of the Court of Appeals' opinion regarding Roberts' first point of error is as follows:

> In his first issue, appellant argues that the trial court abused its discretion by admitting the evidence of his assault conviction. Appellant argues that this evidence was inadmissible under Rule 609 of the Texas Rules of Evidence because an assault against a man is not considered a crime involving moral turpitude. The State responds that this complaint has not been preserved. We agree with the State.
>
> To preserve a complaint for appellate review, the record must show that the complaint was made to the trial court by a timely objection, stating the grounds for the ruling sought with sufficient specificity to make the trial

4

court aware of the complaint, unless the specific grounds were apparent from the context. *See* Tex.R.App. P. 33.1(a). The purpose for requiring a timely, specific objection is twofold: (1) it informs the judge of the basis of the objection, affording the judge an opportunity to rule on it; and (2) it gives opposing counsel an opportunity to respond to the complaint. *See Resendez v. State,* 306 S.W.3d 308, 312 (Tex.Crim.App.2009). Although we are not hyper-technical in our examination of whether error was preserved, we do adhere to the general rule that the argument on appeal must comport with the objection made at trial. *See Bekendam v. State,* 441 S.W.3d 295, 300 (Tex.Crim.App.2014).

Here, the only legal objection asserted at trial was that the evidence of the assault was more prejudicial than probative. This objection did not put the trial court on notice of the complaint appellant now asserts on appeal— that the assault was not a crime involving moral turpitude. We conclude that appellant's argument on appeal does not comport with the objection he made at trial, and thus, his complaint has not been preserved for appellate review. *Cf. Douds v. State,* No. PD0857–14, ⸺ S.W.3d ⸺, 2015 WL 5981121, at *4–5 (Tex.Crim.App. Oct. 14, 2015) (defendant's trial argument that the requirements of a mandatory blood-draw statute had not been met did not preserve a constitutional complaint on appeal that the blood draw violated the Fourth Amendment where there was no showing of exigent circumstances).

*Roberts v. State*, No. 14-14-00874-CR, 2015 WL 9246779, at *2 (Tex. App. – Houston [14th Dist.] Dec. 17, 2015).

Tex. R. App. Proc. 47.1 requires the court of appeals "hand down a written opinion… that addresses every issue raised and necessary to final disposition of the appeal." Failure by a court of appeals to address a point of error properly raised by a party requires remand for consideration of that point of error. *Light v. State,* 15 S.W.3d 104, 105 (Tex. Crim. App. 2000). The Court of Appeals' opinion wholly fails to conduct any review of the trial court's determination of the probative versus prejudicial value of the prior conviction. The opinion only mentions probative verse prejudicial when it

states, this was the legal objection made at trial by trial counsel. Thus the opinion is not in compliance with Tex. R. App. Proc. 47.1.

## PRAYER

For these reasons, Mr. Roberts prays this Court to grant discretionary review and remand to the Court of Appeals to conduct a review of Roberts' point of error alleging the prior conviction was more prejudicial than probative.

Respectfully submitted,

**ALEXANDER BUNIN**
Chief Public Defender
Harris County Texas

*/s/ Angela Cameron*
**ANGELA CAMERON**
Assistant Public Defender
1201 Franklin, 13th floor
Houston Texas 77002
(713) 368-0016
TBA No. 00788672
email: angela.cameron@pdo.hctx.net

## CERTIFICATE OF SERVICE

I certify that I provided a copy of the foregoing petition to the Harris County District Attorney and the State Prosecuting Attorney via e-filing service on the 28th day of December 2015.

*/s/ Angela Cameron*
**ANGELA CAMERON**

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 9.4(i)(3), undersigned counsel certifies that this brief complies with the type-volume limitations of Tex. R. App. Proc. 9.4(e)(i).

1.      This petition for discretionary review contains 2,132 words printed in a proportionally spaced typeface.

2.      This brief is printed in a proportionally spaced, serif typeface using Garamond 14 point font in text and Garamond 12 point font in footnotes produced by Microsoft Word software.

3.      Upon request, undersigned counsel will provide an electronic version of this brief and/or a copy of the word printout to the Court.

4.      Undersigned counsel understands that a material misrepresentation in completing this certificate, or circumvention of the type-volume limits in Tex. R. App. Proc. 9.4(j), may result in the Court's striking this brief and imposing sanctions against the person who signed it.

/s/ Angela Cameron
**ANGELA L. CAMERON**

2015 WL 9246779
Only the Westlaw citation is currently available.

SEE TX R RAP RULE 47.2 FOR
DESIGNATION AND SIGNING OF OPINIONS.

DO NOT PUBLISH—TEX. R. APP. P. 47.2(B).
Court of Appeals of Texas,
Houston (14th Dist.).

Charles Roberts, Appellant
v.
The State of Texas, Appellee

NO. 14–14–00874–CR | Memorandum
Opinion filed December 17, 2015

On Appeal from the 177th District Court, Harris County,
Texas, Trial Court Cause No. 1381559

**Attorneys and Law Firms**

Angela Lee Cameron, for Charles Roberts.

Devon Anderson, Alan Curry, Carly Dessauer, for The State
of Texas.

Panel consists of Chief Justice Frost and Justices Christopher
and Donovan.

## MEMORANDUM OPINION

Tracy Christopher, Justice

 **\*1** We consider three issues in this appeal from a conviction
for murder: (1) whether the trial court abused its discretion
by admitting evidence of a prior conviction, (2) whether
defense counsel rendered ineffective assistance by failing to
object that appellant was in shackles during the punishment
phase of trial, and (3) whether the trial court reversibly erred
when it failed to give a reasonable-doubt instruction for
unadjudicated bad acts. We overrule each issue and affirm the
trial court's judgment.

## BACKGROUND

The complainant in this case died of a single gunshot
wound to the abdomen. His body was found inside of his

vehicle, parked just outside of a grocery store. The shooter
left no physical evidence at the scene, and there were no
eyewitnesses or surveillance footage of the shooting.

Police came to suspect that appellant may have been involved
in the murder. Text messages revealed that the complainant
had gone to the grocery store to sell appellant two ounces
of hydroponic marijuana. Phone records also showed that
appellant was within range of a cell phone tower next to the
grocery store at the time of the shooting.

Appellant turned himself in to police when he learned that
a warrant had issued for his arrest. Before he was released
on bond, appellant encountered a family acquaintance in jail.
The acquaintance wrote a letter to his jailors, claiming that
appellant had confessed to killing a man for two ounces of
hydroponic marijuana.

At trial, appellant admitted that he had spoken with the
acquaintance in jail, but he denied having made a confession
of murder. Appellant further admitted that he had gone to
the grocery store to purchase the hydroponic marijuana, but
he testified that he left without completing the transaction
because he did not trust the complainant. According to
appellant, the complainant was not alone like he had said he
would be, and the complainant was in a different vehicle than
what he had previously described.

The jury rejected appellant's testimony, convicted him
of murder, and assessed his punishment at fifty years'
imprisonment.

## PRIOR CONVICTION

Before appellant took the stand, the trial court conducted a
hearing outside the presence of the jury to determine if there
were any "impeachable priors" at issue. Appellant stated that,
although he had no felonies on his record, he did have two
misdemeanor convictions for assault and another conviction
for possession of marijuana. Because one of the assault
convictions involved a family member, the State argued that
it constituted a crime involving moral turpitude.

Appellant personally explained to the trial court that the
assault was just a fight between him and his father.
Appellant's defense counsel then argued that, to whatever
extent the evidence of the assault conviction was relevant,
the trial court should exclude it because it was more

prejudicial than probative. The trial court determined that the evidence of the assault conviction was admissible, and the State impeached appellant with that evidence at the end of appellant's cross-examination.

**\*2** In his first issue, appellant argues that the trial court abused its discretion by admitting the evidence of his assault conviction. Appellant argues that this evidence was inadmissible under Rule 609 of the Texas Rules of Evidence because an assault against a man is not considered a crime involving moral turpitude. The State responds that this complaint has not been preserved. We agree with the State.

To preserve a complaint for appellate review, the record must show that the complaint was made to the trial court by a timely objection, stating the grounds for the ruling sought with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context. *See* Tex.R.App. P. 33.1(a). The purpose for requiring a timely, specific objection is twofold: (1) it informs the judge of the basis of the objection, affording the judge an opportunity to rule on it; and (2) it gives opposing counsel an opportunity to respond to the complaint. *See Resendez v. State,* 306 S.W.3d 308, 312 (Tex.Crim.App.2009). Although we are not hyper-technical in our examination of whether error was preserved, we do adhere to the general rule that the argument on appeal must comport with the objection made at trial. *See Bekendam v. State,* 441 S.W.3d 295, 300 (Tex.Crim.App.2014).

Here, the only legal objection asserted at trial was that the evidence of the assault was more prejudicial than probative. This objection did not put the trial court on notice of the complaint appellant now asserts on appeal—that the assault was not a crime involving moral turpitude. We conclude that appellant's argument on appeal does not comport with the objection he made at trial, and thus, his complaint has not been preserved for appellate review. *Cf. Douds v. State,* No. PD0857–14, —— S.W.3d ——, 2015 WL 5981121, at \*4–5 (Tex.Crim.App. Oct. 14, 2015) (defendant's trial argument that the requirements of a mandatory blood-draw statute had not been met did not preserve a constitutional complaint on appeal that the blood draw violated the Fourth Amendment where there was no showing of exigent circumstances).

## SHACKLES

Appellant took the stand during the punishment phase of trial, wearing shackles or leg irons. Defense counsel did not object to appellant being in any kind of restraints. At the end of appellant's testimony, both sides rested and the jury was removed from the courtroom. The trial court then put the following comments on the record:

> All right. I also want the record to reflect that once the —once the Defendant was found guilty, it's the deputy's policy to put him in leg irons. And when he was called to testify here in punishment, he got up and his legs [sic] irons started banging around and clanking when he started walking to the witness stand before I had a chance to admonish him or the jury on that.

> So I assume the jury may have seen that he had leg irons, but he basically got up and started walking toward the box before I had a chance to say anything. So made that kind of issue moot.

Appellant now argues in his second issue that he received ineffective assistance of counsel because defense counsel did not object to appellant being in shackles while in the presence of the jury. We review claims of ineffective assistance of counsel under the standard set forth in *Strickland v. Washington,* 466 U.S. 688 (1984). Under *Strickland,* the defendant must prove that his trial counsel's representation was deficient, and that the deficient performance was so serious that it deprived him of a fair trial. *Id.* at 687. Counsel's representation is deficient if it falls below an objective standard of reasonableness. *Id.* at 688. A deficient performance will only deprive the defendant of a fair trial if it prejudices the defense. *Id.* at 691–92. To demonstrate prejudice, there must be a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694. Failure to make the required showing of either deficient performance or sufficient prejudice defeats the claim of ineffectiveness. *Id.* at 697. This test is applied to claims arising under both the United States and Texas Constitutions. *See Hernandez v. State,* 726 S.W.2d 53, 56–57 (Tex.Crim.App.1986).

**\*3** Our review of defense counsel's performance is highly deferential, beginning with the strong presumption that counsel's actions were reasonably professional and were motivated by sound trial strategy. *See Jackson v. State,* 877 S.W.2d 768, 771 (Tex.Crim.App.1994). When the record is silent as to counsel's strategy, we will not conclude that the defendant received ineffective assistance unless the challenged conduct was "so outrageous that no competent

attorney would have engaged in it." *See Goodspeed v. State,* 187 S.W.3d 390, 392 (Tex.Crim.App.2005). Rarely will the trial record contain sufficient information to permit a reviewing court to fairly evaluate the merits of such a serious allegation. *See Bone v. State,* 77 S.W.3d 828, 833 (Tex.Crim.App.2002). In the majority of cases, the defendant is unable to meet the first prong of the *Strickland* test because the record on direct appeal is underdeveloped and does not adequately reflect the alleged failings of trial counsel. *See Mata v. State,* 226 S.W.3d 425, 430 (Tex.Crim.App.2007).

A sound trial strategy may be imperfectly executed, but the right to effective assistance of counsel does not entitle a defendant to errorless or perfect counsel. *See Robertson v. State,* 187 S.W.3d 475, 483 (Tex.Crim.App.2006). Isolated instances in the record reflecting errors of omission or commission do not render counsel's performance ineffective, nor can ineffective assistance of counsel be established by isolating one portion of counsel's performance for examination. *See Ex parte Welborn,* 785 S.W.2d 391, 393 (Tex.Crim.App.1990). Moreover, it is not sufficient that the defendant show, with the benefit of hindsight, that counsel's actions or omissions during trial were merely of questionable competence. *See Mata,* 226 S.W.3d at 430. Rather, to establish that counsel's acts or omissions were outside the range of professionally competent assistance, the defendant must show that counsel's errors were so serious that he was not functioning as counsel. *See Patrick v. State,* 906 S.W.2d 481, 495 (Tex.Crim.App.1995).

Shackles are "inherently prejudicial" when used conspicuously in front of the jury. *See Holbrook v. Flynn,* 475 U.S. 560, 568 (1986). During the guilt phase of trial, they can undermine the presumption of innocence, interfere with the defendant's ability to communicate with his counsel, and affront the dignity and decorum of the judicial process. *See Deck v. Missouri,* 544 U.S. 622, 630–31 (2005). Related concerns are implicated in the punishment phase as well. Shackles can threaten the accuracy of reliable decisionmaking, especially in capital cases, by suggesting to the jury that the defendant is a danger to the community. *Id.* at 632–33. Due process accordingly forbids the routine use of shackles that are visible to the jury, except in "special circumstances," such as where there are case-specific security needs or a risk of escape. *Id.* at 633. Even in such circumstances, the trial court must make all efforts to prevent the jury from seeing the defendant in shackles. *See Bell v. State,* 415 S.W.3d 278, 281 (Tex.Crim.App.2013).

Here, the record does not reflect any special circumstances that would justify the use of shackles. The trial court commented that shackles were employed pursuant to a "policy" of restraining the defendant once he has been found guilty, which actually suggests the absence of special circumstances. [1]

1    While we question the need for such a "policy," the trial court must be mindful of its obligations to ensure that the shackles are not visible to the jury.

Assuming for the purposes of argument that there was no reason for appellant's compelled restraint, the record does not reflect defense counsel's reasons for failing to object to the shackles. Appellant did not move for a new trial, and defense counsel did not file an affidavit or otherwise explain his tactics or reasoning.

**\*4** The State argues that defense counsel may have willfully chosen to allow appellant to take the stand in shackles in an effort to elicit the jury's sympathy and obtain a more lenient sentence. This explanation would be consistent with the sole theme of appellant's statements on direct examination, which was that the jury had made a mistake and was about to send an innocent man to jail. If that were counsel's strategy, it may have been risky, but not objectively unreasonable. *Cf. Estelle v. Williams,* 425 U.S. 501, 508 (1976) ("[I]t is not an uncommon defense tactic to produce the defendant in jail clothes in the hope of eliciting sympathy from the jury."). On this record, appellant has not overcome the strong presumption that counsel's failure to object was consistent with sound trial strategy. *See Goodspeed,* 187 S.W.3d at 392 (stating that an appellate court should not find deficient performance on a silent record unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it").

### CHARGE ERROR

During the punishment phase, the State elicited testimony of appellant's disciplinary records from when he was in jail. The records showed that appellant had been cited for fighting, disruptive conduct, and threatening another man. Appellant had explanations for each of these citations. On the fighting charge, appellant testified that he and another man were "horseplaying," which he suggested was nonaggression. As for the disruptive-conduct charge, appellant indicated that he misbehaved because some of his food had been taken after

a "shakedown." And as for the threatening charge, appellant explained that he "had some words" with another man who "came into the tank thinking he was running things and changed the TV."

The trial court did not give a reasonable-doubt instruction in its punishment charge as it related to these unadjudicated bad acts. Appellant did not request such an instruction either. Nevertheless, appellant argues in his third issue that the trial court reversibly erred by failing to give the instruction sua sponte.

When deciding whether there is reversible error in a jury charge, we must first determine whether error exists, and if error does exist, we must then determine whether the defendant was harmed by the error. *See Middleton v. State,* 125 S.W.3d 450, 453 (Tex.Crim.App.2003). If, as in this case, the defendant did not object to the charge at trial, we can only reverse the trial court's judgment if the defendant was egregiously harmed by the trial court's error. *See Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1984).

The State concedes that it was error for the trial court to omit the instruction and we agree. *See Huizar v. State,* 12 S.W.3d 479, 484 (Tex.Crim.App.2000) (holding that no objection or request is required to receive a reasonable-doubt instruction). However, because appellant did not object to the omission of the instruction, appellant must show that he was egregiously harmed to be entitled to relief. The State contends that appellant cannot meet this difficult burden. We agree here as well.

Any harm that is inflicted by an erroneous charge must be assayed in light of the entire jury charge, the evidence as a whole, the arguments of counsel, and any other relevant information revealed by the record. *See Stuhler v. State,* 218 S.W.3d 706, 719 (Tex.Crim.App.2007). An error is egregiously harmful only when it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Id.* This is a difficult standard to prove and such a determination must be done on a case-by-case basis. *See Hutch v. State,* 922 S.W.2d 166, 171 (Tex.Crim.App.1996).

***The Entire Jury Charge.*** In this case, the punishment charge did not specifically address the unadjudicated bad acts or the burden of proof that must be met before the bad acts could be considered. However, the charge generally informed the jury that "[t]he burden of proof in all criminal cases rests upon the State throughout the trial and never shifts to the defendant." We conclude that this factor is neutral in our assessment of egregious harm. *See Martinez v. State,* 313 S.W.3d 358, 367 (Tex.App.–Houston [1st Dist.] 2009, pet. ref d) (examining a punishment charge with identical language).

 ***\*5*** ***The Evidence as a Whole***. The evidence against appellant was largely circumstantial, but the circumstantial evidence was also strong. Phone records established that appellant arranged a meeting with the complainant to purchase two ounces of hydroponic marijuana. The records also established that appellant was near the scene of the crime when the complainant was shot. After his body was found, there were no drugs on the complainant's person, but inside of his car, police discovered the lid to the mason jar that had stored the hydroponic marijuana.

According to a family acquaintance, appellant admitted when he was in jail that he had killed the complainant for the hydroponic marijuana. At trial, appellant tried to discredit the acquaintance by suggesting that the acquaintance could have read about the murder in an online newspaper article. However, there was no evidence that the acquaintance had seen the article, and in his letter to the jailors, the acquaintance specifically mentioned that appellant had shot the complainant over marijuana of the hydroponic variety, a detail that had not been mentioned in the article.

As for his prior convictions, appellant admitted during the guilt phase that he had been convicted of misdemeanor assault, and during the punishment phase, the State introduced evidence of appellant's misdemeanor possession conviction. No reasonable-doubt instruction was required as to these extraneous offenses because they had already been proven in another proceeding. *See Bluitt v. State,* 137 S.W.3d 51, 54 (Tex.Crim.App.2004).

Also during the punishment phase, the State elicited testimony about appellant's disciplinary record in jail, which was composed of certain unadjudicated bad acts. As mentioned above, appellant admitted to having some level of involvement in each of the bad acts, which weighs against any suggestion that the jury would have disregarded the bad acts had a reasonable-doubt instruction been provided. Considering further the seriousness of the murder charge and the strength of the evidence in support of the murder conviction, the evidence of the unadjudicated bad acts does not make the case for punishment clearly more persuasive. *See Martinez,* 313 S.W.3d at 368.

***The Arguments of Counsel*** In its closing statements, the State made no reference to appellant's prior bad acts, whether they were adjudicated or unadjudicated. Defense counsel, on the other hand, acknowledged that appellant had "a record of some misconduct," but counsel said that the record was "not egregious." Because neither side emphasized appellant's prior bad acts, this factor weighs against a finding of egregious harm.

***Other Relevant Information.*** We may consider the severity of the punishment assessed, which may indicate egregious harm in some situations. *Id.* Here, appellant was sentenced to fifty years' imprisonment, which is in the midrange for a felony of the first degree. *See* Tex. Penal Code § 12.32. This sentence is slightly higher than the minimum sentence that was advocated by the State, which was forty-five years, but it is also lower than the sentence that the State specifically requested, which was sixty years. Appellant did not argue for a specific term of years. This factor does not weigh greatly in favor of finding egregious harm.

Having considered all of the factors together, we conclude that appellant was not egregiously harmed by the trial court's failure to sua sponte give a reasonable-doubt instruction on the matter of appellant's unadjudicated bad acts.

## CONCLUSION

**\*6** The trial court's judgment is affirmed.

**All Citations**

Not Reported in S.W.3d, 2015 WL 9246779

---

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.